Exhibit 11

 **Gmail**

Chad Garland <chadlygarland@gmail.com>

---

## Re: Freedom of Information Act Request
1 message

---

**Chad Garland** <chadgarland@msn.com>                                       Wed, Jun 23, 2021 at 7:51 PM
To: CENTCOM Macdill AFB CENTCOM HQ Mailbox Freedom of Information Act <centcom.macdill.centcom-hq.mbx.freedom-of-information-act@mail.mil>

Salzstr. 4
67657 Kaiserslautern
GERMANY

June 23, 2021

United States Central Command J6-RDF (FOIA)
7115 South Boundary Boulevard
MacDill AFB, FL 33621-5101

Howdy,

This is a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 and the Privacy Act, 5 U.S.C. § 552a. Please consider this request under both statutes to ensure maximum disclosure.

### Records Requested

Please provide me with copies of the documents, database records, data, meta-data, and imagery pertaining to the HOSTILE incident in Afghanistan on or about July 12, 2018, involving the death of Sgt. 1st Class Christopher Andrew Celiz, age 32, of Summerville, S.C. This request includes, but is not limited to, reports of investigation or inquiry, explosives exploitation cell reports, Significant Activity ("SIGACT") reports, event storyboards, after-action reports ("AARs"), weapons intelligence cell reports and lessons learned reports.

### Requested Search and Other Parameters

> **Photographs and other Visual Materials:** I request that any photographs or other visual materials responsive to my request be released to me in the same format, color, quality and resolution as it exists in agency records. For example, if a photograph was taken digitally, I request disclosure of the digital file at the resolution it was in the original — or as it is in the file maintained in agency records if the original is not available — and not a reduced resolution version of the file or a printout and scan of that image.

> **Duplicate Pages:** I request disclosure of supposedly "duplicate" pages to enable analysis not only of the information included on any given page, but also how that information relates to information on surrounding pages in their original context. Though certain pages may have been previously released separately under other conditions, their existence in the context of any records responsive to this request renders them functionally new pages.

> **Emails:** Please search for emails relating to the subject matter of my request.

> **Destroyed Records:** If any records responsive or potentially responsive to my request have been destroyed, my request includes, but is not limited to, any and all records relating to or referring to the destruction of those records. This includes, but is not limited to, any and all records relating or referring to the events leading to the destruction of those records.

### Format

I request responsive records be released in digital format (soft copy) via DoD SAFE or a similar service as a first preference, or via compact disc or similar media as an alternative.

### Segregable Records

I request full release of the above documents to the extent allowable under the law and agency discretion, in the interest of maximum disclosure. However, I will accept all releasable portions of any documents reasonably segregable or redacted for the protection of privacy rights, state secrets, or other cognizable interests under the Act. In redacting, please "black out" any exempt material.

If a document is denied in whole or in part, please specify which exemption(s) apply for each part or whole document denied. Please provide an itemized inventory and detailed factual justification for denial of parts or whole documents specifying the number of pages in each document and the total number of pages withheld. For classified material, please indicate the classification level, identity of the classifier, date or event for automatic declassification review or downgrade, if applicable the identity of the official authorizing extension of automatic declassification or review past six years and the reason for the extension.

### ___Fees, Fee Category and Processing Priority___

In order to help you determine my status for the purpose of assessing fees, you should know that I am an individual and I am seeking these records for noncommercial purposes.

I am willing to pay reasonable fees for this request to a maximum of $50, but if the fees are estimated to exceed this limit, I request that you please inform me of the amount before further processing my request. I am willing to permit tolling of the statutory time limit to discuss fees, if necessary.

### ___Contact Information___

Should you need to discuss this matter with me, I can be reached at chadgarland@msn.com. I ask that correspondence be conducted via email to the extent possible, but I have included a cell phone number below where I can be reached as well.

Thank you for your consideration of this request.

Sincerely,


/s/Chad Garland

Chad Garland
(c) 815-627-6887 || chadgarland@msn.com

Exhibit 12



**UNITED STATES CENTRAL COMMAND**
7115 SOUTH BOUNDARY BOULEVARD
MACDILL AIR FORCE BASE, FLORIDA 33621-5101

19 August 2021

Mr. Chad Garland
*Emailed to: chadgarland@msn.com*

Dear Mr. Garland,

   This is in response to your Freedom of Information Act Request (FOIA) dated 23 June 2021 seeking copies of the documents, database records, data, meta-data, and imagery pertaining to the HOSTILE incident in Afghanistan on or about 12 July 2018, involving the death of Sergeant First Class Christopher Andrew Celiz.  Specifically, your request sought reports of investigation or inquiry, explosives exploitation cell reports, Significant Activity ("SIGACT") reports, event storyboards, after action reports ("AARs"), weapons intelligence cell reports, and lessons learned reports.

   You are identified as a Stars and Stripes reporter on the Stars and Stripes website.  Per Department of Defense Directive (DoDD) 5122.11, paragraph E6.3.2.2, you may not file a FOIA request in your capacity as a Stars and Stripes reporter and DoD employee.  Nor may you file a FOIA request as a representative of the news media outside your capacity as a Stars and Stripes reporter.  Per DoDD 5122.11, paragraph 4.4.1, Stars and Stripes must operate in accordance with DoDD 5500.7, which requires DoD employees to obtain prior approval before engaging in outside employment. Prior approval has not been demonstrated here. Therefore, we are closing your request.

   No allowable fees could be charged for this request pursuant to 32 Code of Federal Regulations § 286.12(e). For any further assistance and to discuss any aspect of your request, you have the right to contact Directorate for Oversight and Compliance, Defense Privacy, Civil Liberties, and Transparency Division, FOIA Public Liaison (Ms. Tonya Fuentes) at OSD.FOIALiaison@mail.mil; telephone (571) 372-0462. Additionally, you have the right to contact the Office of Government Information Services (OGIS) to inquire about the FOIA mediation services they offer. The contact information for OGIS is:  Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, MD 20740-6001, e-mail at ogis@nara.gov; telephone at (202) 741-5770; toll free at (877) 684-6448; or facsimile at (202) 741-5769.

   If you are not satisfied with this response, you have the right to appeal to the appellate authority, Ms. Joo Chung, Director of Oversight and Compliance, Office of the Secretary of Defense. The appellate address is Directorate for Oversight and Compliance, 4800 Mark Center Drive, ATTN:  DPCLTD, FOIA Appeals, Mailbox# 24, Alexandria, VA 22350-1700. As an alternative, you may use the Office of the Secretary of Defense FOIA request portal at https://pal.whs.mil/ to submit your appeal electronically, or you can email your appeal to OSD.FOIA-APPEAL@mail.mil, and state "FOIA Appeal" in the subject of the email. Your

appeal must be postmarked or submitted electronically within 90 calendar days from the date of this letter, cite USCENTCOM's case #21-0335, and clearly mark "Freedom of Information Act Appeal" in your correspondence.

If you have any questions regarding your inquiry, please contact the FOIA Requester Service Center at (813) 529-6285, centcom.macdill.centcom-hq.mbx.freedom-of-information-act@mail.mil, and refer to USCENTCOM case #21-0335.

Sincerely,

Michael A. Detiege
Lieutenant Colonel, U.S. Air Force
Chief, Command Records Branch

 Gmail

Chad Garland <chadlygarland@gmail.com>

## Re: Freedom of Information Act Appeal, USCENTCOM FOIA #21-0335

**Chad Garland** <chadgarland@msn.com>                                        Mon, Nov 8, 2021 at 10:20 PM
To: OSD.FOIA-APPEAL@mail.mil

Hello,

Please find attached my Freedom of Information Act appeal on the matter of my FOIA request identified as USCENTCOM FOIA #21-0335 (GarlandCT_Appeal - CENTCOM FOIA 21-0335.pdf). I have attached the original request as Enclosure1 and the USCENTCOM response as Enclosure2.

Respectfully,

Chad Garland

/s/Chad Garland
Chad Garland
(c) 443-745-3240 ǁ chadgarland@msn.com

---

**3 attachments**

📄 **GarlandCT_Appeal - CENTCOM FOIA 21-0335.pdf**
55K

📄 **Enclosure1_FOIA 21-0335-CENTCOM-request.pdf**
145K

📄 **Enclsoure2_FOIA 21-0335 Closure Letter.pdf**
240K

Salzstr. 4
67657 Kaiserslautern
GERMANY

November 8, 2021

Hello there:

      This is an appeal of the U.S. Central Command's denial of my Freedom of Information Act request of 23 June 2021, which has been identified as USCENTCOM FOIA #21-0335 (Enclosure 1).

      I made the request in my own name, and clearly stated in the body of the request that I was seeking the records as "an individual … for noncommercial purposes." I did not name any other requesting parties, did not claim to represent any other party, and did not have any agreement or authority to represent any other party in this matter. I made the request using my personal computer, from home, over personally paid internet services, via an email account in my own name.

      CENTCOM responded with an adverse determination emailed 19 August 2021, addressed to "Mr. Chad Garland" at my personal email address (Enclosure 2). However, the denial justification is based on its *identification* of me as a Stars and Stripes reporter from the internet. USCENTCOM claims that DoD Directive 5122.11, paragraph E6.3.2.2 prohibits me from filing a FOIA request "in your capacity as a Stars and Stripes reporter and DoD employee" or "as a representative of the news media" outside of that capacity. It further posits that DoD Directive 5500.7 requires DoD employees to obtain prior approval before engaging in outside employment, and without citing absolutely any relevant statutory authority or requirement under DoD's FOIA program, it suggests I am somehow required to demonstrate that I have obtained such approval in order to assert my personal right of access under the Act.

      I find it necessary to appeal this denial as an improper withholding, primarily because USCENTCOM incorrectly bases it on my identity and suggests that I am somehow subject to requirements that do not exist in the FOIA statute or any DoD FOIA program regulation. It provides no basis to conclude I was acting in any capacity other than a personal one, and fails to cite any evidence to show a legally sufficient basis to determine that I am required to either obtain or demonstrate prior approval to file a FOIA request when doing so. No other federal employee is required to demonstrate prior approval to file a FOIA request. Further, mere employment with an entity of the DoD cannot disqualify me from filing a personal FOIA request, as it would disqualify *all* federal employees from using the FOIA personally. As several DoD FOIA sites attest to the fact that civilian employees and service members retain their right to FOIA in a personal capacity, so must I.

      My federal employment is entirely irrelevant to my FOIA request, as FOIA rights are not contingent on the identity or circumstances of the requester. Moreover, nothing in DoDD 5500.7 requires federal employees to seek prior approval to file FOIA requests in their personal capacity, whether as part of outside employment activity or not. Nor did I claim to be engaged in outside employment or business activity. The requirement of DoDD 5500.7 that a federal employee seek prior approval to engage in outside activity pertains exclusively to (1) financial disclosure filers, (2) when engaged in compensated employment or business activity (3) with a prohibited source. I am neither a financial disclosure filer, nor am I engaged in compensated outside employment or business activity with any source. As I am not then required to obtain outside approval, I need not demonstrate it to anyone. But, moreover, nothing in the FOIA statute grants a DoD FOIA program official the authority to request such a demonstration from "any person."

Furthermore, while my federal employment at the Stars and Stripes may be known to USCENTCOM or discoverable via the internet, contrary to the agency's claim, nothing in the cited paragraph of DoDD 5122.11 prohibits me or any other DoD employee personally from filing a FOIA request whatsoever. It merely states the compliance requirements of DoD's FOIA regulation that prohibit a ***Government organization*** from filing a FOIA request. To the extent such a prohibition extends to DoD employees, it must only pertain to them when acting in their capacity as ***representatives*** of a Government organization. A federal employee is an individual, and thus still a "person" as defined by statute, and "any person" has a right to nonexempt records requested pursuant to the FOIA statute. The statutory definition of "person" excludes federal agencies, but the definition of "agency" does not include or mention federal employees. However, as agencies cannot act on their own, they must act through representatives or delegates. As 5 C.F.R. 2635.102(k) defines "person," it excludes agencies or other Federal Government entities, or "any officer or employee thereof ***when acting in his official capacity on behalf of that agency or entity.***" That is, when acting as a representative of the Government.

The courts have held that in the FOIA context, the term "representative" is something more specific than mere "employee," "official" or "affiliate." *All Party Parliamentary Grp. on Extraordinary Rendition v. U.S. Dep't of Def.*, 754 F.3d, 1052 (D.C. Cir. 2014). Rather, "FOIA requesters who have authority to file requests on behalf of … government entities are 'representatives' of such entities when they file requests of the sort they have authority to file." *Id.* at 1053.

Moreover, the courts have repeatedly found that a requester who does not clearly identify that he is acting on behalf of another party is not a "representative" of that third party and that third party has no standing as a requester. See, e.g., *Three Forks Branch*, 358 F. Supp. 2d at 3, (holding that a party did not have standing in a FOIA claim where "it is not clear that the request is being made on behalf of" that party); *SAE Productions Inc. v. FBI*, 589 F. Supp. 2d 76, 80 (D.D.C. 2008) (finding that a corporation lacked standing to bring suit in a FOIA matter where its president did not adequately identify that the FOIA requests were made on behalf of the corporation). A "passing reference" does not suffice to confer standing, and "[a]ny arrangements [a requester has] with a third party are legally irrelevant for purposes of [a] FOIA request." *Three Forks Ranch Corp. v. Bureau of Land Mgmt*, 358 F. Supp. 2d 1, 3-4 (D.D.C. 2005) (citing *McDonnell v. United States*, 4 F.3d 1227, 1238 n. 6 (3d Cir. 1993) and *Burka v. U.S. Dep't of Health Human Servs.*, 142 F.3d 1286, 1291 (D.C. Cir. 1998)) Therefore, unless a requester clearly claims to be a representative of a federal agency, they could not be *presumed* to be one. As DoD Manual 5400.07 does not permit agencies to file requests, no person could *in fact* be its representative on such a request.

I have neither claimed to be a federal agency representative on my FOIA request, nor am I such a representative. And while USCENTCOM might assert that I *could be* a "representative of the news media" in my capacity as a Stars and Stripes reporter, I did not claim that status either. Nor does the term "representative" alone have a synonymous meaning with "reporter" or the statutorily defined phrase "representative of the news media." The phrase refers expressly to people who perform media functions, liberally construed, and is explicitly defined in the FOIA itself as a type of requester eligible for certain privileges (and therefore a *person* not an *agency* or agency *representative*). DoD's FOIA regulation is clear that fee categories like "representative of the news media" pertain to the underlying requester who performs the media function, not any agent or attorney "representing a client" (i.e., a "representative"). 32 C.F.R. § 286.12(c) Therefore, insofar as a federal employee acting on behalf of a federal agency is a representative of a federal agency, and federal agencies are not persons, then a federal employee acting on behalf of a federal agency is not a "representative of the news media." As I sought these records in my individual capacity, did not claim media status or U.S. Government status, and did not name any co-requester, client or underlying third-party, it is entirely inappropriate for USCENTCOM to cite either my U.S. Government employment status or my media status as a basis for its determination. Moreover, the FOIA statute does not even permit USCENTCOM to base a denial on news media status — it is a preferential fee category and nothing more.

2

It's clear USCENTCOM understood that the request belonged to *me* and not some other party. It's response is addressed to "Mr. Chad Garland," greets me as "Mr. Garland," and identifies the request as "**your** Freedom of Information Act Request." It cites no claim on my part to represent any other party, but states that "**you** are identified as a Stars and Stripes reporter on the Stars and Stripes website." This merely establishes some evidence of my employment status, not my authority to represent the Stars and Stripes in a FOIA matter or any evidence that I was doing so in this case.

USCENTCOM alleges that "per Department of Defense Directive 5122.11, paragraph E6.3.2.2, **you** may not file a FOIA request as a Stars and Stripes reporter or DoD employee" (emphasis added). Again, this cited paragraph is about FOIA compliance and does not restrict *me* or any other DoD employee personally from making requests under the Act, nor does it establish that Stars and Stripes reporters or DoD employees are authorized agency "representatives" on FOIA matters. That same paragraph of DoDD 5122.11 refers to DoD's FOIA regulation. At the time DoDD 5122.11 was published in the 1990s and for some 41 years in total (1975 through 2016), that same FOIA program regulation clearly stated that regardless of whatever official authority a person might have for obtaining records, that person retains a private right of access the same as any other member of the public when invoking the FOIA. Indeed, DoD has never published a rule that would prohibit federal employees from filing public records requests on their own behalf.

Clearly, rather than base its determination on the administrative record of my request, USCENTCOM has based it on information about *me* from other sources — namely an internet inquiry into my employment situation — contrary to well-established principles of FOIA law that prohibit agencies from predicating withholding on the identity of the requester. *NARA v. Favish,* 541 U.S. 170 (2004) (holding that "[a]s a general rule, withholding information under FOIA cannot be predicated on the identity of the requester"). Further, the courts have rejected an application of the FOIA on an "individualized basis" that would entail an inquiry into the requester's identity or the circumstances of his request. *United Technologies Corp. v. F.A.A.*, 102 F.3d 692 (2d Cir. 1996) (rejecting a rule that would require the Government to "conduct an inquiry regarding the identity of the requester and the circumstances surrounding its request"). As the Supreme Court held in *FBI v. Abramson*, 456 U.S. 615, 631 (1982), "Congress created a scheme of categorical exclusion; it did not invite a judicial weighing of the benefits and evils of disclosure on a case-by-case basis."

The Government cites no "other reasons" beyond details about *my identity* for deeming that this request was improper. It cites no failure to abide by published FOIA rules about time, place, fees or procedures that "any person" must follow. Thus, it appears USCENTCOM is denying my private FOIA rights by simply unilaterally redefining me as a "representative" of my federal employer, despite the fact that I was not acting on behalf of my employer, did not cite any authority belonging to my employer, did not use federal duty time or use any other federal resources in making my request.

As the Government bears the burden of proving the basis for its denial and it has not done so, I respectfully ask that this request be remanded to USCENTCOM for further processing.

Thank you for your prompt consideration of this appeal.


Respectfully,


/s/Chad Garland
Chad Garland
(c) 443-745-3240 || chadgarland@msn.com

3

Exhibit 14

 Gmail

**Chad Garland <chadlygarland@gmail.com>**

## Interim response Appeal 22-AC-0008-A1 FOIA request 21-0335
1 message

**OSD MC-ALEX OATSD PCLT Mailbox DFOIPO FOIA-APPEALS** <osd.mc-alex.oatsd-pclt.mbx.dfoipo-foia-appeals@mail.mil>
To: Chad Garland <chadgarland@msn.com>

Tue, Nov 9, 2021 at
3:48 PM

Greetings,


This is in response to your Freedom of Information Act (FOIA) appeal, 22-AC-0008-A1 in reference to FOIA Request 21-0335.  We received your appeal in this office on

November 8, 2021.


Due to an extremely heavy FOIA workload, we are unable to complete your appeal within the statutory time requirement.  In fairness to the general public, we make every effort to treat all requesters equally.  Accordingly, responses are made on a first-in, first-out, easy-hard basis, and controlled in response queues.  When the appellate review of your case is complete, you will be notified by the appellate authority, the Assistant to the Secretary of Defense for Privacy, Civil Liberties, and Transparency (PCLT), of the final decision.  You may direct any questions concerning this appeal to: osd.mc-alex.oatsd-pclt.mbx.dfoipo-foia-appeals@mail.mil.


Respectfully,


r/


FOIA APPEALS TEAM

Hi there,

This is a **private party** request pursuant to the Freedom of Information Act for copies of the following records to be provided to me in electronic format:

> -- Statements of Award (SOA), citations, certificates and/or accompanying narrative statements for all Purple Heart Medals awarded since December 31, 2014.

I request full release of the above documents to the extent allowable under the law, but in the interest of maximum disclosure, I will accept them in reasonably segregable, partial, or redacted form for the protection of privacy rights, state secrets, or other cognizable interests under the Act.

**I request a fee waiver**, as I am a "representative of the news media" seeking these records for news gathering purposes -- not for commercial use. Disclosure is in the public interest and likely to contribute significantly to public understanding of ongoing operations or activities of the federal government.

**I am willing to pay for this request to a maximum of $50**, but if the fees are estimated to exceed this limit, I request that you inform me of the amount before further processing my request. I am willing to permit tolling of the statutory time limit to discuss fees if a fee waiver is not granted.

For the purposes of helping determine whether to grant my request for a fee waiver, **I am providing detailed statements below to establish my "preferred status" as a news-media requester**, as well as the public interest nature of the requested records.


**News-Media Requester Status**

I am a print and online journalist requesting these records for news gathering purposes, and not for commercial use. I am providing the information in this section exclusively for the purposes of determining my status as **a representative of the news media**, per Title 5 U.S.C. § 552(a)(4)(A)(ii), for procedural matters pertaining to fee waivers and processing priority as requested above.

A news-media requester can be a "person" or an "entity" under the FOIA. The Act permits the government to consider a person's track record, in the absence of a firm contract or publishing plans, stating that "journalists who demonstrate a solid basis for expecting publication through a news media entity shall be considered a representative of the news media." A news media entity's size of audience, method of distribution, and availability by subscription/purchase are all irrelevant: the code sections acknowledge that news media entities may be those that "disseminate news solely on the internet" and that methods of delivery may evolve in time. (Please see this Department of Justice training slide deck on fee waivers for reference: https://www.justice.gov/oip/training/practical_approaches_to_fee_determinations_july_2019/download.)

A determination of a requester's status according to the above definition is based on that person's overall activities, not employment status, publication plans, job title, or affiliation with any other organization or entity. In other words, a private party may qualify as a representative of the news media on his or her own, regardless of the fact the person is not a paid, full-time employee of a corporate media organization.

I have several years of training and experience in news reporting. I received a graduate degree in journalism from Arizona State University (2013), and news reporting has been my primary occupation or activity for more than seven years, working variously as a student-volunteer, intern, reporting fellow, temporary paid reporter and full-time staff writer.

I have published my distinct work in many news outlets since at least 2011, including The Associated Press, *Los Angeles Times*, NBC News, *China Morning Post*, *Arizona Republic*, *Christian Science Monitor*,

*Houston Chronicle*, *The Denver Post*, and more, which provides a strong basis to expect that I will be able to publish future work with the same or similar entities. Additionally, I have an audience of more than 13,000 followers subscribed to my social media accounts, to whom I directly share news and current events information that I gather, edit and distribute myself, often pertaining to government activities and operations.

**I submit that the above activities qualify me personally as a news media requester under the statutory definition in the FOIA.**

### Fee Waiver Requested

I have requested a waiver of all fees, as **the disclosure of the requested information is in the public interest and is likely to contribute significantly to public understanding of ongoing operations and activities of the federal government.** Disclosure of the records is not primarily in my commercial interest.

This request meets the criteria to qualify for a fee waiver as described under the DOD Freedom of Information Act Program, 32 CFR Part 286.12(l)(2).

I am a representative of the news media and the requested records pertain exclusively to the identifiable activities or operations of the U.S. federal government, namely the activities of U.S. service members involved in overseas contingency operations. The disclosure of these records is likely to contribute significantly to public understanding of those government activities, because I am able to disseminate the meaningful information contained therein to a broader audience and in a more easily accessible format than it has been distributed.

Specifically, the requested records pertain to activities that commanders have designated worthy of recognition through awards and therefore epitomize what the Air Force values in its airmen. Such activities often occur out of view of the larger American public, and thus the information from the requested records is likely to enlighten the American people on such matters as what their military forces are doing in faraway places. I intend to publish the records online and to produce works derived from the information in either written or video formats.

### Certification

I certify that I am acting on my own personal behalf, using my own time and personal email address, from my personal residence. Upon receipt of any responsive records, I will exercise sole personal discretion over their subsequent distribution or other use.

I certify to the best of my knowledge and belief that all of the above information is true and correct.

Should you need to discuss this matter with me, I can be reached at chadgarland@msn.com. I ask that correspondence be conducted via email to the extent possible. Thank you for considering this request.

Sincerely,


Chad Garland
Salzstr. 4
67657 Kaiserslautern
GERMANY
(c) 443-745-3240 || chadgarland@msn.com

Hi there,

This is a **private party** request pursuant to the Freedom of Information Act for copies of the following records to be provided to me in electronic format:

> -- Statements of Award (SOA), citations, certificates and/or accompanying narrative statements for all Silver Star Medals awarded since December 31, 2014.

I request full release of the above documents to the extent allowable under the law, but in the interest of maximum disclosure, I will accept them in reasonably segregable, partial, or redacted form for the protection of privacy rights, state secrets, or other cognizable interests under the Act.

**I request a fee waiver**, as I am a "representative of the news media" seeking these records for news gathering purposes -- not for commercial use. Disclosure is in the public interest and likely to contribute significantly to public understanding of ongoing operations or activities of the federal government.

**I am willing to pay for this request to a maximum of $50**, but if the fees are estimated to exceed this limit, I request that you inform me of the amount before further processing my request. I am willing to permit tolling of the statutory time limit to discuss fees if a fee waiver is not granted.

For the purposes of helping determine whether to grant my request for a fee waiver, **I am providing detailed statements below to establish my "preferred status" as a news-media requester**, as well as the public interest nature of the requested records.


**News-Media Requester Status**

I am a print and online journalist requesting these records for news gathering purposes, and not for commercial use. I am providing the information in this section exclusively for the purposes of determining my status as **a representative of the news media**, per Title 5 U.S.C. § 552(a)(4)(A)(ii), for procedural matters pertaining to fee waivers and processing priority as requested above.

A news-media requester can be a "person" or an "entity" under the FOIA. The Act permits the government to consider a person's track record, in the absence of a firm contract or publishing plans, stating that "journalists who demonstrate a solid basis for expecting publication through a news media entity shall be considered a representative of the news media." A news media entity's size of audience, method of distribution, and availability by subscription/purchase are all irrelevant: the code sections acknowledge that news media entities may be those that "disseminate news solely on the internet" and that methods of delivery may evolve in time. (Please see this Department of Justice training slide deck on fee waivers for reference:
https://www.justice.gov/oip/training/practical_approaches_to_fee_determinations_july_2019/download.)

A determination of a requester's status according to the above definition is based on that person's overall activities, not employment status, publication plans, job title, or affiliation with any other organization or entity. In other words, a private party may qualify as a representative of the news media on his or her own, regardless of the fact the person is not a paid, full-time employee of a corporate media organization.

I have several years of training and experience in news reporting. I received a graduate degree in journalism from Arizona State University (2013), and news reporting has been my primary occupation or activity for more than seven years, working variously as a student-volunteer, intern, reporting fellow, temporary paid reporter and full-time staff writer.

I have published my distinct work in many news outlets since at least 2011, including The Associated Press, *Los Angeles Times*, NBC News, *China Morning Post*, *Arizona Republic*, *Christian Science Monitor*,

*Houston Chronicle*, *The Denver Post*, and more, which provides a strong basis to expect that I will be able to publish future work with the same or similar entities. Additionally, I have an audience of more than 13,000 followers subscribed to my social media accounts, to whom I directly share news and current events information that I gather, edit and distribute myself, often pertaining to government activities and operations.

**I submit that the above activities qualify me personally as a news media requester under the statutory definition in the FOIA.**

<u>**Fee Waiver Requested**</u>

I have requested a waiver of all fees, as **the disclosure of the requested information is in the public interest and is likely to contribute significantly to public understanding of ongoing operations and activities of the federal government.** Disclosure of the records is not primarily in my commercial interest.

This request meets the criteria to qualify for a fee waiver as described under the DOD Freedom of Information Act Program, 32 CFR Part 286.12(l)(2).

I am a representative of the news media and the requested records pertain exclusively to the identifiable activities or operations of the U.S. federal government, namely the activities of U.S. service members involved in overseas contingency operations. The disclosure of these records is likely to contribute significantly to public understanding of those government activities, because I am able to disseminate the meaningful information contained therein to a broader audience and in a more easily accessible format than it has been distributed.

Specifically, the requested records pertain to activities that commanders have designated worthy of recognition through awards and therefore epitomize what the Air Force values in its airmen. Such activities often occur out of view of the larger American public, and thus the information from the requested records is likely to enlighten the American people on such matters as what their military forces are doing in faraway places. I intend to publish the records online and to produce works derived from the information in either written or video formats.

<u>**Certification**</u>

I certify that I am acting on my own personal behalf, using my own time and personal email address, from my personal residence. Upon receipt of any responsive records, I will exercise sole personal discretion over their subsequent distribution or other use.

I certify to the best of my knowledge and belief that all of the above information is true and correct.

Should you need to discuss this matter with me, I can be reached at chadgarland@msn.com. I ask that correspondence be conducted via email to the extent possible. Thank you for considering this request.

Sincerely,


Chad Garland
Salzstr. 4
67657 Kaiserslautern
GERMANY
(c) 443-745-3240 || chadgarland@msn.com

Exhibit 17

Salzstr. 4
67657 Kaiserslautern
GERMANY

December 9, 2020

Headquarters, U.S. Marine Corps
Attn:  FOIA/PA (ARSF) Rm 2B289
3000 Marine Corps Pentagon
Washington, DC 20350-3000

Howdy,

This is a **private party** request on **my own personal behalf**, pursuant to the Freedom of Information Act, for copies of the following records to be provided to me in electronic format:

> — Records of investigation completed during the period 1 January 2019 to 13 May 2020 and involving allegations against Marine Corps Brig. Gen. Austin E. Renforth for sexual assault or harrassment while serving in Iraq.

I request full release of the above documents to the extent allowable under the law, but in the interest of maximum disclosure, I will accept them in reasonably segregable, partial, or redacted form for the protection of privacy rights, state secrets, or other cognizable interests under the Act.

**I request a fee waiver**, as I am a "representative of the news media" seeking these records for news gathering purposes — not for commercial use. Disclosure is in the public interest and likely to contribute significantly to public understanding of ongoing operations or activities of the federal government.

**I am willing to pay for this request to a maximum of $50**, but if the fees are estimated to exceed this limit, I request that you inform me of the amount before further processing my request. I am willing to permit tolling of the statutory time limit to discuss fees if a fee waiver is not granted.

For the purposes of helping determine whether to grant my request for a fee waiver, **I am providing detailed statements below to establish my "preferred status" as a news-media requester**, as well as the public interest nature of the requested records.

**News-Media Requester Status**

I submit that I personally qualify as **a representative of the news media**, as defined in Title 5 U.S.C. § 552(a)(4)(A)(ii), and I am providing the information in this section for the purposes of determining my news-media requester status for procedural matters pertaining to fee waivers and processing priority as requested above.

**I am a print and online journalist requesting these records for news gathering purposes**, and not for commercial use. I have a graduate degree in journalism from Arizona State University (2013), and news

reporting has been my primary occupation or activity for more than seven years, working variously as a student-volunteer, intern, reporting fellow, temporary paid reporter and full-time staff writer at several organizations, publications, institutions or news services. I have published my distinct work in many news outlets since at least 2011, including *The Associated Press, Los Angeles Times, NBC News, China Morning Post, Arizona Republic, Christian Science Monitor, Houston Chronicle, The Denver Post*, and more, which provides a strong basis for expecting that I will be able to publish future work with the same or similar news media entities.

Additionally, I am able to directly share news and current events information that I gather, edit and distribute myself to a segment of the public that subscribes to my social media accounts — a collective following of about 13,000 and growing on the Twitter account @chadgarland and TikTok @chadlygarland. I personally own and maintain these accounts; my shares, likes, reposts and comments via those accounts represent my personal views and not those of any organization.

**Fee Waiver Requested**

I have requested a waiver of all fees, as **the disclosure of the requested information is in the public interest and is likely to contribute significantly to public understanding of ongoing operations and activities of the federal government.** Disclosure of the records is not primarily in my commercial interest.

The requested records pertain exclusively to the identifiable activities or operations of the U.S. federal government, namely the actual or alleged misconduct by a general officer in the Marine Corps, as well as the process by which the matter was investigated and adjudicated.

The disclosure is likely to contribute significantly to public understanding, because these records are generated by the government and are not already in the public domain, and because I am able to disseminate the meaningful information contained in them to a broader audience and in a more easily accessible format (news article, microblog, video report) than they are currently available.

Little is known publicly about the allegations against Brig. Gen. Renforth or the disposition of the investigation into those charges, and so the investigation reports are likely to shed significant light on the matter and to provide the public with a better understanding of how the military holds accountable those in its most senior ranks, a matter that relates to the military's ability to maintain a ready force and to the armed forces' integrity, which the Supreme Court has held is "critical to the military's relationship with its civilian direction" (Dep't of Air Force v. Rose, 425 U.S. 354, 375 n. 14 (1976).

**Expedited Processing Requested**

I have requested expedited processing of this request, **as these records pertain to government activity and concern a matter of current exigency for the American public**, namely the conduct of a high-ranking military official who in May was nominated for promotion.

I am a person primarily engaged in disseminating information, and the requested records are urgently needed to inform the public concerning the actual or alleged government activity described herein.

As a news-media requester, I have a compelling need for the records, due to my particular urgency to inform the public about information related to the conduct of high-ranking military officials, particularly those who have been nominated for advancement subsequent to allegations of misconduct.

Delay in the processing of this request would compromise my recognized interests by diminishing the value of the "latest scoop" in a breaking news story that would provide information that the public wants quickly about matters of sexual harassment within the military, particularly allegations involving a high-ranking official who could receive a second star very shortly. The topic of sexual misconduct and the military's handling of such allegations has long been of public interest and the topic of hundreds of news reports. It is of special significance this year, following the death of Vanessa Guillen and claims of her mishandled sexual assault allegations. The issue has also come under greater scrutiny through news reports such as this one by CBS News in November:

https://www.cbsnews.com/news/military-sexual-assault-survivors-broken-system/. Or this one by The War Horse in December, which alleges specifically that the Marine Corps is failing victims of sexual misconduct:

https://thewarhorse.org/retaliation-gag-order-marine-corps-silences-woman-sexual-assault-victim-thae-ohu-investigation/.

### Certification

I certify that **I am acting on my own personal behalf**, using my own time and personal email address, from my personal residence, and for my use at my own personal discretion. I am acting without the prior knowledge, consent, approval or direction of any other person or entity.

I certify to the best of my knowledge and belief that all of the above information is true and correct.

Should you need to discuss this matter with me, I can be reached at chadgarland@msn.com. I ask that correspondence be conducted via email to the extent possible. Thank you for considering this request.

Sincerely,


Chad Garland
(c) 443-745-3240 || chadgarland@msn.com

**DEPARTMENT OF THE NAVY**
HEADQUARTERS UNITED STATES MARINE CORPS
3000 MARINE CORPS PENTAGON
WASHINGTON, DC 20350-3000

Exhibit 18

5720
ARSF-MP
December 22, 2020

**SENT VIA E-MAIL TO:  CHADGARLAND@MSN.COM**
MR CHAD THOMAS GARLAND
STARS AND STRIPES
SALZSTRASSE 4
67657 KAISERSLAUTERN
GERMANY

Dear Mr. Garland:

SUBJECT:   YOUR FREEDOM OF INFORMATION ACT (FOIA)REQUESTS, FILE
NUMBERS DON-USMC-2020-011217, -011524, -2021-001819, AND -002190

     This responds to the subject FOIA request for a myriad of records and information
regarding several Marine Corps topics.  Your requests were controlled under file numbers above.

      The Stars and Stripes Newspaper is an organization within the Department of Defense
(DoD).  As such, it and its employees do not qualify as requesters under the FOIA.  The statute
provides that requests may be made by "an individual, partnership, corporation, association, or
public or private organization *other than an agency*."  See 5 U.S.C. 551(2).  This definition has
been interpreted further to include foreign individuals and foreign or domestic governments
(state and local) but not entities within the DoD.  Since you are an employee of the Stars and
Stripes, we unfortunately have no alternative but to close these requests and take no further
action.  If you have not done so already, we encourage you to contact the Office of U.S. Marine
Corps Communications at Headquarters Marine Corps and the History Division at the Gray
Research Center for the information you are seeking.

     If you wish to challenge this decision, you may submit an appeal.  Since you have created
an account in FOIAonline, you may submit it directly within the web-based system.  To do this,
you would log in to your account, retrieve your original request, and then click on the "Create
New" tab in the left-hand column and select "Appeal".  The basic information from your request
will be duplicated for you, and then you can type in the basis of your appeal.  If you prefer to use
regular mail, you may submit it to the Judge Advocate General (Code 14), 1322 Patterson
Avenue SE, Suite 3000, Washington Navy Yard, DC  20374-5066.  Your appeal, if any, must be
postmarked within 90 calendar days from the date of this letter and should include a statement
indicating why you believe it should be granted.  I recommend that your letter and its envelope
both bear the notation, "Freedom of Information Act Appeal".

     You also have the right to seek assistance and/or dispute resolution services from the
Department of the Navy FOIA Public Liaison, Mr. Christopher Julka, at (703) 697-0031 or
Christopher.a.julka@navy.mil.  You may also contact the Office of Government Information
Services (OGIS) for assistance and/or dispute resolution at ogis@nara.gov or (877) 684-6448.
For more information online about services provided by OGIS, please visit their website at
https://ogis.archives.gov.

5720
ARSF-MP
December 22, 2020


I am the official responsible for this determination.  Should you have questions about this action, please contact me at (703) 614-4008 or via e-mail to hqmcfoia@usmc.mil.  Please reference the file numbers in the subject line above.

Sincerely,

M. L. PETERS
Deputy, FOIA/PA Programs

Exhibit 19

Salzstr. 4
67657 Kaiserslautern
GERMANY

January 18, 2020

Judge Advocate General (Code 14)
1322 Patterson Avenue SE, Suite 3000
Washington Navy Yard DC 20374-5066

Hello there,

This is an appeal under the Freedom of Information Act of the Headquarters U.S. Marine Corps FOIA Office's 22 December 2020 denial of my FOIA request, identified by the file number **DON-USMC-2020-011217** (Enclosure 1). I am also appealing HQMC's denial of my request for a fee waiver (Enclosure 2).

My request sought "Statements of Award (SOA), citations, certificates and/or accompanying narrative statements for all Bronze Star Medals with 'V' Device awarded since December 31, 2014" (Enclosure 3).

In correspondence on this request and three others, Michael L. Peters of HQMC FOIA/PA programs wrote that "[s]ince you are an employee of the Stars and Stripes, we unfortunately have no alternative but to close these requests and take no further action." In support of this determination, Mr. Peters cited the statutory definition of "any person," stating that FOIA requests may not be made by agencies excluded from that definition, including Department of Defense entities. He cites no evidence for concluding that I made the request on behalf of Stars and Stripes.

HQMC appears to disregard the fact that I acted in a personal capacity. I stated so in the original request, which I submitted using private resources in my unpaid off-duty time, without the consent, direction, approval or knowledge of anyone other than myself. On 26 August 2020, in response to HQMC's inquiry, again using my personal resources and off-duty time, I expressed a second time that I was seeking the records on my own personal behalf, stating also that I personally qualified for news-media status on the basis of my own experience and publication record, as well as my ability to disseminate information via social media channels I exclusively own and operate. In both the initial request and this subsequent correspondence, I cited the Department of Justice's guidance stating that news-media status is established by the requester's *overall activities*, not who employs him.

In denying my request for a fee waiver, HQMC suggests the information is already in the public domain in order to conclude that "it is unclear" that disclosure of the records to me would be in the public interest.

I find it necessary to appeal both determinations on the following grounds, which I will expand upon below:

(1) HQMC improperly withheld the requested records.

(2) HQMC had sufficient information to grant at least a partial reduction in fees.

As I consider HQMC's denial of my FOIA request a part of a concerning pattern of violations of my civil liberties (as mentioned, three other requests were similarly denied), I have fully analyzed these adverse determinations in the light of the Act, its legislative history, case law, Department of Justice guidance, DoD implementing rules, regulations, policy guidance and supplementary materials, and Department of the Navy rules, regulations and other policy guidance. The below factual and procedural history, as known to me at this time, also informs this analysis.

**Factual and Procedural Background**

No one other than me had any prior knowledge of my intent to seek these records, nor did anyone give me permission, guidance, direction, consent or approval to request them via FOIA or any other means.

In all correspondence on this matter, I have used my personal email addresses chadlygarland@gmail.com and chadgarland@msn.com (both of which I have owned and operated since 2005, when I worked for a private company). I used a personal computer and commercial internet services I paid for out-of-pocket at my personal residence. I wrote in the first person, using the personal pronouns "I" and "me." The signature block listed my name, residential address in Germany, personal email address and personal cell phone number. I sent the correspondence during my personal free time (off-duty hours). I cited no employer, official position title, official address or official duty location. I made no claim to represent anyone other than myself or to be acting on behalf of any other entity.

I submitted the initial request at 09:17 local time on 14 August 2020 (before going to work). I requested copies of the records be provided "to me, a U.S. citizen, as a private party and representative of the news media." I stated my personal willingness to pay fees.

Seeking to establish my news-media status, I cited my personal qualifications as a journalist, recapping the elements of 5 U.S.C. § 552(a)(4)(A)(ii) and 32 C.F.R. § 286.12(6) that define the term "representative of the news media," and noting that a determination is to be based on "the person's overall activities, not employment status, intent to publish, or affiliation with a larger organization or entity." I also noted that where a requester may not have a contract or firm plans to publish, as in my case, the Act allows the government to consider a requester's past history of publication as demonstrating a strong basis for expecting an ability to publish.

After certifying the request as true to the best of my knowledge and belief, I asked that all subsequent correspondence be directed to me, at my personal email address chadgarland@msn.com. I signed the request with my own name and no others.

At no point in that initial request or subsequent correspondence did I claim to be acting on behalf of Stars and Stripes or in an official capacity. I mentioned the organization only after HQMC named it in a query on 26 August 2020, in which FOIA/PA program manager Sally A. Hughes stated that her office would need to know "if you are requesting records on your own behalf or in your capacity as a journalist for Stars and Stripes" for fee category purposes.

I was directed to respond to Mr. Peters and did so that day at 20:15 local time (after coming home from work). I expressed (again) that I was requesting the records "on my own behalf in my capacity as a 'private party' requester, as that term is described under DoD Manual 5400.7." I also reiterated my request to be granted news-media requester status under 5 U.S.C. § 552(a) and 32 C.F.R § 286, stating that it is a status "I qualified for years before working at Stars and Stripes and which extends beyond my work at any one newspaper or news wire." I also reiterated the statutory definition of "representative of the news media," as well as my personal qualifications and publication history. I further asserted both my personal FOIA and First Amendment rights.

I heard no further on the matter for more than 90 days, until the 22 December 2020 final disposition letter, in which Mr. Peters stated that Stars and Stripes "and its employees do not qualify as requesters under the FOIA," and that "[s]ince you are an employee of the Stars and Stripes, we unfortunately have no alternative but to close these requests and take no further action."

In response, that day at 22:51 local time, I asked HQMC for further information about this determination. I also asked that officials reconsider the administrative closure, allowing until the end of the day 23 December 2020 for a response. I have heard none.

**(1)** __HQMC improperly withheld the requested records.__

I might save you a lot of reading in this section by summing up my point thus: The HQMC FOIA office's denial is improper because it turns on *who I am*. As the 11th Circuit observed in *Sikes v. Navy* about two years ago, "the Supreme Court has made clear that 'the identity of the requesting party has *no bearing* on the merits of his or her FOIA request.'"[1]

At issue is whether HQMC exercised its proper authority when it administratively closed my request on the basis of my actual or alleged federal employment. I submit that it did not, as it had no authority to consider my employment in making its decision and as I made this request in a private or personal capacity and in compliance with all published rules and procedures for doing so.

The FOIA establishes the right of "any person," enforceable in court, to access government records subject to the Act. The courts have repeatedly found that the legislation's purpose is "to establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language,"[2] and that the only significant limits on the exercise of FOIA rights are the nine exemptions.[3] Upon any request, an agency's duty to provide the records promptly to "any person" is conditioned on whether the request (1) is made in accordance with published rules stating the time, place, fees and procedures to be followed and (2) reasonably describes the records sought.[4] Except where specified, the Act "does not authorize the withholding of information or limit the availability of records to the public."[5]

There is no *clearly delineated statutory language* denying federal employees their personhood or FOIA rights. Moreover, there appears to be no clear published rule currently in force regarding the time, place, fees or procedures that federal employees must follow when making FOIA requests. Indeed, HQMC cites no failure on my part to reasonably describe the records sought, no exemption or exception allowing it to withhold those records, nor any published procedural requirement that I failed to follow.

The crux of the government's denial is the statutory definition of "person," which excludes any "agency" of the U.S. Government. HQMC states conclusively that this disqualifies employees of DoD entities from seeking records under the Act. It provides the following rationale: "The Stars and Stripes Newspaper is an organization within the Department of Defense (DoD). As such, it and its employees do not qualify as requesters under the FOIA. … Since you are an employee of the Stars and Stripes, we unfortunately have no alternative but to close these requests and take no further action."

In order for this determination to be right and proper, four elements must be true: **(A)** that the Stars and Stripes Newspaper is an organization within the DoD that does not qualify to request records under the FOIA; **(B)** that its employees do not qualify as requesters under the FOIA; **(C)** that I made my request as its employee; and **(D)** that, because of (B) and (C), HQMC had no alternative course of action.

### A. Is the Stars and Stripes Newspaper an organization within the DoD that does not qualify as a requester under the FOIA?

The first element is well supported by federal laws and regulations, as 32 C.F.R. § 246 establishes Stars and Stripes as a joint-service nonappropriated fund instrumentality within the DoD, which does not fall under the definition of "person" as defined in 5 U.S.C. § 551(2). I concur with HQMC that this does

---

[1] See *Sikes v. Navy*, 896 F.3d 1227, 1234 (11th Cir. 2018), quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press* , 489 U.S. 749, 771, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) (emphasis in the original).
[2] See *Federal Open Market Comm. v. Merrill*, 443 U.S. 340 (1979), at 351, citing S. Rep. No. 1219, 88th Congress, 2nd Session (S. 1666).
[3] See *Military Audit Project v. Casey*, 656 F.2d 724 n.11 (D.C. Cir. 1981).
[4] See *Department of Justice Guide to the Freedom of Information Act* at pp. 23-24.
[5] See 5 U.S.C. § 552(d).

not qualify the Stars and Stripes organization to invoke FOIA, but I dispute the logic as to how. The Act itself does not contemplate restrictions on U.S. Government access, it only establishes the rights of persons.[6] What excludes federal agencies like Stars and Stripes are rules DoD establishes to that effect under authority granted under the Act, which enshrines no rights or privileges to the contrary.

DoD Manual 5400.07 states that FOIA "may not be used by federal agencies seeking official information."[7] The manual further defines "FOIA requester" as specifically excluding agencies within the Executive Branch of the U.S. Government. Additionally, the version of 32 C.F.R. § 286 in effect up to at least 2016 stated that the "provisions of the FOIA are reserved for persons … as opposed to U.S. Federal Agencies."[8] Likewise, a Department of the Navy FOIA program regulation that was in force prior to around July 2018 stated that "[n]either Federal agencies nor fugitives from justice may use the FOIA to access agency records."[9] Though these particular regulations have been removed, there have been no changes to the law that would contravene those particular statements.

DoDM 5400.07 incorporates as the definition of "federal agency," by reference, the same definition Congress uses for "agency" within the FOIA, taken from 5 U.S.C. § 551(1), which includes executive and military departments.[10] Thus, the above DoD policy grants HQMC authority to dismiss requests from Executive Branch entities such as Stars and Stripes.

### B. Do Stars and Stripes employees qualify as requesters under the FOIA?

We cannot conclude that the above means individual federal employees lack FOIA rights. In fact, because **(i)** employees are persons, and **(ii)** HQMC lacks the authority to even consider federal employment as a factor affecting a requester's rights, federal employees have the same rights as "any person"; but, **(iii)** this question warrants special analysis of DoD policies regarding Stars and Stripes.

**(i) Employees are persons.** As used throughout Title 5, "employee" is defined as "an officer and individual" who meets three clear criteria: he or she must be (a) appointed in the civil service by a duly authorized official; (b) engaged in the performance of a Federal function under authority of law or an Executive act; and (c) subject to the supervision of an individual listed as one of the duly authorized officials under criterion (a) while engaged in the performance of the duties of his position.[11]

Because Congress incorporates the definition of "agency" from 5 U.S.C. § 551(1) cited above into FOIA, the courts rely in the same context on the definition of "person" from 5 U.S.C. § 551(2) — which HQMC cites in its denial letter — that is: "an individual, partnership, corporation, association, or public or private organization other than an agency."[12] DoDM 5400.07 incorporates this same definition by reference.

Thus, under Title 5, an "employee" is an individual, which is a person, which is not an agency. As the FOIA establishes the right of "any person" to access public records, it follows that agency employees who are persons have rights to request information under the Act. There are, in fact, only three narrowly tailored exceptions to the legislation's broad "any person" standard, none of which is predicated on a

---

[6] See *Federal Bureau of Investigation v. Abramson,* 456 U.S. 615, 631 n.14 (1982), where the court observes that "FOIA is legislation directed at securing public access to information, not an Act intended to interdict the flow of information among Government agencies."
[7] See DoDM 5400.07 of January 25, 2017, section 6, para. 6.1.a.
[8] See 32 C.F.R. § 286.22(b) and DoD 5400.07-R of September 1998, at paragraph C5.1.2.
[9] See 32 C.F.R. § 701.3(c).
[10] See 5 U.S.C. § 552(f)(1).
[11] See 5 U.S.C § 2105(a).
[12] See 5 U.S.C. § 551(2).

requester's employment with the U.S. Government.[13] Indeed, the Department of Justice has determined that, even in an official capacity, a federal employee would be considered a "person" under the terms of the Act.[14]

There is a precedent for distinguishing between an individual's access rights and those of a U.S. Government institution where they serve. In particular, requests made by members of Congress, *even "clearly acting in a completely official capacity*," are to be treated as those from "any person." Only "duly authorized" requests from the legislative body itself, such as through committee chairs, fall under the provisions of 5 U.S.C. § 552(d).[15] Thus, even where Congress may have greater right of access than that afforded by FOIA, its members individually have no less a right than other persons.

If, as the Justice Department has opined, a federal employee meets the technical definition of "person" and may assert FOIA rights in his official capacity — indeed, nothing in DoD Directive 5400.7, DoD Manual 5400.07, 32 C.F.R § 286 or the DoD FOIA Handbook explicitly states they could not — it would be all the more true that they may assert such rights when off-duty or in a personal capacity. An individual would not meet two of the three criteria for the definition of "employee" when not performing a federal function subject to supervision of another employee. Published rules for the DoD and DoN FOIA programs supported this conclusion at least until the DoD FOIA program regulation in 32 C.F.R. was overhauled to incorporate provisions of the OPEN Government Act of 2007 and the FOIA Improvement Act of 2016, neither of which changed the underlying basis for such a conclusion.

Up until 2018, DoN's FOIA regulation stated that "[w]hile authority may exist to disclose records to individuals in their official capacity, the provisions of the instruction in this part apply if the same individual seeks the records in a private or personal capacity."[16] Prior to 2017, 32 C.F.R. § 286 included a similar statement.[17]

As the FOIA legislation is concerned with establishing a public right of access, broadly conceived, it follows that such rights would extend to those Americans employed by the U.S. Government, the largest single employer in the United States. It makes little sense that records would be made available to the general American public *and foreign nationals*, to include even America's enemies, but not to those citizens and nationals in the civil service who have sworn allegiance to the country.

**(ii) HQMC lacks authority to consider employment.** What's more, neither the FOIA nor any DoD regulation allows the government to distinguish between requesters on the basis of employment or duty status.

First, requesters are not required to state where they are employed, why they are seeking the records or what they plan to do with them. But even if that information were known to FOIA administrators, *it is immaterial*, as the Supreme Court has repeatedly held such factors cannot be used

---

[13] See *Department of Justice Guide to the Freedom of Information Act* at pp. 19-21, which describes the narrow exceptions to the "any person" definition as fugitives from justice seeking records pertaining to their fugitive status, foreign governments or international government organizations and their representatives seeking records from agencies of the intelligence community, and persons who have waived FOIA rights under a plea agreement.

[14] See *FOIA Update*, Vol. VI, No. 1, dated January 1, 1985, which states that "a FOIA request received from an employee of another federal agency, even one acting in his official capacity, would be a request from a 'person' and would therefore satisfy ... the technical requirement of the FOIA ..."

[15] See *FOIA Update*, Vol. V, No. 1, dated January 1, 1984, which states that "when an agency receives a FOIA request from a Member of Congress, it should first determine whether it is a duly authorized request on behalf of Congress through a legislative committee or subcommittee" and that "if the request is not an official committee or subcommittee request, then the agency should process it as a request from 'any person.'"

[16] See 32 C.F.R. § 701.5(f)(5).

[17] See 32 C.F.R. § 286.4(f).

as grounds to withhold (or disclose) records. A person's particular reasons for seeking access have no bearing on their rights of access, as the Supreme Court held in *NARA v. Favish*:

> [A]s a general rule, when documents are within FOIA's disclosure provisions, citizens should not be required to explain why they seek the information. A person requesting the information needs no preconceived idea of the uses the data might serve. The information belongs to citizens to do with as they choose. Furthermore, as we have noted, the disclosure does not depend on the identity of the requester. As a general rule, if the information is subject to disclosure, it belongs to all.[18]

Further, the courts have found that an inquiry into the identity of the requester and the circumstances of their request would constitute a weighing of "the benefits and evils of disclosure" on a basis Congress did not invite.[19] The FOIA "was not intended to be applied on such an individualized basis," the 2nd Circuit held, as Congress created a scheme of categorical exclusion through exemptions.[20]

Indeed, from those nine exemptions alone arise "[t]he only important limitations on the exercise of the rights provided by the Act," the court has held.[21] As the exemptions pertain to the request, not the requester, they are not dependent on the employment status of the person seeking them.

And, at least as regards Stars and Stripes reporters in particular, published DoD regulations forbid commanders from using their U.S. Government status to block the release to them of otherwise releasable information.[22]

**(iii) A special analysis of DoD policy statements.** Before closing this question, a set of DoD memos by the Pentagon's top FOIA officials have sent going back 30 years merit separate analysis, as they specifically concern requests from the Stars and Stripes or its personnel. Though Mr. Peters does not cite any of this guidance, it likely forms a policy basis for HQMC's denial.

I can only speak here to three memos that I have been able to review — those from 1991 and 1999 which are published online,[23] and a 2018 issuance provided to me in September (Enclosure 4). I believe there is a fourth from 1993 but have never seen it, though DoD indicates it is consistent with the others.

First, I find the same flaws in the DoD guidance that I've already noted in HQMC's denial rationale, at least as far as it appears to conflate the notion "*'person' excludes 'agency'*" with the unfounded assertion "*'person' excludes 'federal employee.'*"

The earliest DoD memo states that, "as [the Stars and Stripes Newspaper is an organization within DoD], its personnel do not qualify as requesters under the FOIA." Citing the statutory definition of "person," this memo states that "a federal agency, **or a representative of a federal agency** may not serve a FOIA request on its own agency, or another federal agency" (emphasis mine here and in the below to paragraphs). It directs components that receive a FOIA request "from **representatives** of the Stars and Stripes" to inform them of this fact before advising them "to seek their information through official channels, apart from the FOIA."

---

[18] See *NARA v. Favish*, 541 U.S. 157, 172 (2004).

[19] See *FBI v. Abramson*, 456 U.S. 615, 631 (1982).

[20] See *United Technologies Corp. v. F.A.A.*, 102 F.3d 688 (2d Cir. 1996), citing *FBI v. Abramson*.

[21] See *Military Audit Project v. Casey*, 656 F.2d 724 n.11 (D.C. Cir. 1981).

[22] See 32 C.F.R. § 246 App. D, paragraph C.2.a.

[23] See DoD Directorate of Freedom of Information and Security Review memorandum 99-CORR-006 "FOIA requests from the Stars and Stripes" of 19 January 1999 and Office of the Secretary of Defense memo 91-CORR-126 "FOIA Requests from the Stars and Stripes newspaper" of 1 August 1991, available on the DoD Open Government FOIA Resources webpage (https://open.defense.gov/Portals/23/Documents/starstrp.pdf).

The 1999 correspondence directs FOIA administrators to "advise your components once again that Stars and Stripes personnel, **as representatives of a Federal Agency**, may not request information under FOIA." This memo cites no explicit legal basis, but its reference to the 1991 memo suggests reliance on the same interpretation of the law turning on the "person" standard.

Citing a 25-year history for its policy, DoD in 2018 states that "**any representative** of the Stars and Stripes cannot use the FOIA to gain access to DoD information." Again citing the Act's "person" standard, this memo reiterates that "a federal agency, or **a representative of a federal agency**, may not submit a FOIA request to a federal agency." The memo advises FOIA officials that, upon receiving a request "from the Stars and Stripes, you should close it as 'not a proper FOIA request'" and directs officials to "advise them that they should seek the information through another [sic] outside of the FOIA."

Despite titles and contents suggesting they pertain to requests received from Stars and Stripes and an agency's required response to that organization, the policy would on its face bar *any civil or uniformed service member* from seeking records under FOIA. If the status of Stars and Stripes as an organization with DoD is sufficient to find that "its personnel do not qualify as requesters under the FOIA," then the same must apply to all other DoD personnel.

This cannot be true. The memos are framed not as new policy, but as reminders of existing policy dating to at least 1991. However, existing regulations at that time and in 1999 included the explicit provision, previously referenced at **B.(ii).** above, recognizing that, "while authority may exist to disclose records to individuals in their official capacity, the provisions of this Part apply if the same individual seeks the records in a private or personal capacity."[24] Moreover, Defense Contract Audit Agency, a component under DoD, stated explicitly in its FOIA program regulation at the time that "DCAA organizational elements will consider FOIA requests from [Federal agency officials, among others] as made in a private, rather than official capacity, and will make disclosure and fee determinations accordingly."[25] Notably, this is consistent with treatment of requests from Congressional officials.

Even the regulation governing the Stars and Stripes, effective since 1993, recognizes a distinction between requests made by the organization and those made by its personnel. It states that a "**Government organization** may not file a request for information against another Government organization," but that "it is the responsibility of all commands to honor the DoD Principles of Information, particularly regarding the intent of open access as described in [DoD's FOIA program regulation] when responding to queries from Stars and Stripes **reporters**." The emphasis here is mine. Of note, the DoD Principles of Information require that the FOIA be supported in both letter and spirit, stating that the only grounds not to release information is that such release is "precluded by national security constraints or valid statutory mandates or exceptions."

Moreover, just as DoD regulations forbid officials from using Stars and Stripes reporters' U.S. Government status to block release of records to them, they bar the reporters from using their government status or credentials "to gain special treatment ... or other advantages that are not given equally to civilian media." These two prongs would bar both elements of the DoD memos — the treatment of a reporter's request as that of a "representative of a federal agency," and the direction that they seek the records via a method available to federal agencies and not the civilian media.

Given that these regulations were implemented according to the rule-making process, published in the Federal Register and subject to public comment, and given that the memos were not — and are not meant to override regulations — the 30-year DoD policy must be meant to comport with the overall rule that federal employees *may seek records under FOIA* "in a personal or private capacity." We can also reasonably conclude that DoD would not have sought to impose via memo a policy limiting access by

---

[24] See 32 C.F.R. § 286.4(f).
[25] See 32 C.F.R. § 290.7(e)(4).

"any person" further than is specifically authorized by Congress. Thus, if employees have private rights, I submit that the formulation "representative(s) of a federal agency" in the three DoD memos is significant, particularly as it's used in the two expressly describing the legal foundation for the policy. Both the 1991 and 2018 memos also refer to "representatives" or "any representative" of Stars and Stripes. As I will show, *representative* is not synonymous with *employee* under the Act. Had DoD intended to bar mere employees from seeking records, it could have simply omitted such phrasing. We must, therefore, examine its particular meaning.

There is no definition of "representative of a federal agency" given under FOIA. As already discussed, DoD gives "federal agency" the same meaning as "agency" under its FOIA program, so our understanding of this phrase hinges on the meaning of "representative." In its common and traditional sense, it could refer to a member of a legislature or to "someone who stands for or acts on behalf of another," i.e. an *agent*.[26] In the FOIA context specifically, the term is used in four ways: "a representative of a government entity" other than a State, territory, commonwealth, or district of the United States, or any subdivision thereof, in § 552(a)(3)(e)(ii); "a representative of the news media" as defined in § 552(a)(4)(A)(ii); a representative of a federal officer or employee under § 552(a)(4)(f)(i); and in several references to the "House of Representatives" under § 552(e) and (h).

The use closest to that of the sense in the DoD memos is the first of these, as it concerns a government entity. It is also the only use that creates an exception to the broad "any person" standard under the FOIA. Conveniently, the statutory meaning has been adjudicated, at least as it concerns those who seek records on behalf of foreign governments. Specifically, in 2014 the D.C. Circuit found that interpreting "representative" as equivalent to "official," "employee" or "affiliate" would be too vague.[27] The court found more narrowly that requesters who have the authority to file FOIA requests on behalf of a government entity are "representatives" of such entities when they submit requests "of the sort they have authority to file."[28] Notably, this definition would also apply to non-employees, such as elected legislators. The court arrived at its decision after reviewing the term's common and traditional meaning as referring to an agency relationship, whereby one party is subject to the control of and acting in accordance with instructions of a principal party. In support of its decisions, the court noted its definition as "agent, delegate, substitute, successor, or heir"[29] and "agent for another esp. through delegated authority,"[30] and cited its use in a different statute as meaning "an agent with authority to bind others."[31]

As this court decision concerns the term "representative" in the only case where Congress used it to explicitly and narrowly limit rights of access, I submit that DoD could apply no more expansive a definition. In fact, I think we should be skeptical of the policy the memos articulate, as the FOIA contains no express prohibition against an agency's release of records to another agency, let alone such agency's representatives. As the D.C. Circuit noted in 2014, the U.S. Code "is chock-full of provisions that first mention some entity and then refer to that entity's 'representatives' in order to ensure that provision applies not only to the entity itself but also to that entity acting through others."[32] Had Congress truly intended to bar federal agencies or their representatives from seeking records under FOIA, it could have said so explicitly. Rather, it seems clear that in granting access to "any person," Congress sought to open U.S. Government records as widely as possible, *to all*, not only the agencies that have custody of them and the officials whose duties directly and properly concern the information they contain.

---

[26] Definition coming from Black's Law Dictionary, 10th Edition for the iPhone and iPad. Version: 1.4. Copyright 2009, 2014 Thomson Reuters.

[27] See *All Party Parliamentary Grp. on Extraordinary Rendition v. DOD*, 754 F.3d 1047.

[28] See *All Party Parliamentary Grp. v. DOD*.

[29] *All Party v. DOD*, citing XIII Oxford English Dictionary 660 (J.A. Simpson & E.S.C. Weiner eds., 2d ed.1989).

[30] Id., citing Webster's Third New International Dictionary 1926 (Philip Babcock Gove ed. 3d. Ed. 1993).

[31] Id., citing *Loving v. I.R.S.*, 742 F.3d 1013, 1016 (D.C.Cir.2014).

[32] Id.

However, DoD has an obvious obligation to prevent persons' requests from being displaced or delayed by the processing of requests from federal agencies seeking information for official use via FOIA when those agencies have the authority to obtain them some other way. Prohibiting agencies or their proxies from burdening FOIA programs with their requests seems a reasonable measure to encourage the agencies to use proper channels to obtain official information, so long as it is in line with the provisions of the Act. But such a policy could not be construed as preventing employees from exercising their right of access the same as any other member of the public and for the same reasons (which is to say, any reason at all). While employees might be able to seek records via official channels, they cannot be compelled to do so, particularly if they have no official use for the records, as that would constitute an abuse of their authority.

Further, there's no evidence that Congress intended to impose, by mere implication, stronger limits on access for those citizens who happen to be employed in the civil service than it expressly put into force against foreign governments, felons and those subject to waivers of their rights under plea agreement. So, to the extent DoD's policy is at all defensible, it would only apply to those FOIA requests made by agency "representatives" — that is, those that **(a)** are filed by federal employees on behalf of an agency, and **(b)** are of the sort of FOIA request the employees have legal authority to file.

Given DoD's preoccupation with a legal technicality to block access to records that a Stars and Stripes reporter would use for exactly the purpose Congress intended under the Act, I'm inclined to highlight here that the same technicality that disqualifies an agency from being a FOIA requester disqualifies it from authorizing any "representative" in the sense used in FOIA. Nor, for that matter, would an employee need such authority, as FOIA grants access to "any person." Thus, FOIA officials would have two possible ways to view requests from known federal employees: (1) as an improper agency request, or (2) as an assertion of personal rights. Option (1) is a presumption against disclosure, contrary to the letter and spirit of the law as articulated by Congress, the courts and several presidents. An agency would have to be looking for a reason to deny a request, in other words, to make such a determination. Option (2) is exactly the policy articulated in previous DoD regulations cited above, such as the DCAA FOIA program guidance.

But even if we read "representative" more broadly as encompassing not just those with the authority to file a FOIA request for an agency party, but those authorized to file other types of information requests with something like the force of FOIA requests. This would avoid stripping the personal rights of low-level employees like secretaries, cafeteria workers, janitors, young enlisted personnel, or — as in the case of Stars and Stripes — delivery drivers. DoD might argue that editorial personnel would be "representatives" for the purposes of such a policy — I would argue their authority to do their duties derive from the Constitution and not the agency — and despite any flaws in such a position, it would at least be more tailored than the broad prohibition suggested by the poorly worded memos.

Yet even then, to be "representatives," employees must be seeking records *on behalf of* an agency and must expressly state so in any request. Under FOIA, one cannot merely be *presumed* to be making a request on behalf of someone else. The courts have held that a representative must "clearly indicate" a request is being made "on behalf of" another person, or that other party cannot be legally and administratively deemed a requester.[33] Indeed, a party whose name does not appear as a requester on a FOIA request "has no right to receive either the documents … or notice of an agency decision to withhold the documents."[34] Even if given "passing reference," a person not clearly named as a requester "has not administratively asserted a right to receive [records] in the first place," and thus lacks standing to sue for release in court.[35] Mere mention of one's employer would not make that organization the

---

[33] See *Three Forks Ranch Corp. v. Bureau of Land Mgmt*, 358 F. Supp. 2d 1, 2 (D.D.C. 2005)

[34] See *McDonnell v. U.S.*, 4 F.3d 1227, 1236 (3d Cir. 1993)

[35] Id.

requester, even if that entity ordinarily had a recognized right of access under the FOIA. There's no reason it should be different for an agency, given such organizations lack any such rights.

Therefore, while DoD and HQMC may have some policy basis for denying requests from federal agencies, they only have grounds to deny requests from agency employees when those persons claim to be filing *on behalf of* the U.S. Government entity itself. This makes sense, given that one can only assert rights via a third party that one actually has, and agencies have no express FOIA rights to assert. But where an employee asserts his own rights — or can be presumed to be asserting his own rights — the Act provides DoD and HQMC no authority to consider his actual or alleged employment status or intentions as reasons for an adverse determination against disclosure.

### C. Did I make my request as an employee of the Stars and Stripes?

I have shown thus far that HQMC's denial rationale fails on at least the claim that Stars and Stripes employees (or other federal employees) do not qualify to use the FOIA. It also fails on the claim that I made the request as an employee of the Stars and Stripes.

Though employment at a DoD entity alone is not sufficient to deprive a person of FOIA rights, it nonetheless merits examination insofar as it is an element of HQMC's rationale. Perhaps HQMC believed it was enforcing a legitimate DoD policy, so it's worth considering whether there was a basis to believe I met the minimum standard of being an employee acting in an official capacity, even if not a representative.

Even acting in good faith, however, does not excuse HQMC. As the 11th Circuit observed, "a 'good-faith' catch-all has no basis in the statute and would undermine FOIA's system of narrow and specifically identified exemptions."[36] For my employment status to have any bearing, therefore, HQMC would at a minimum have had to find that (a) I sought records on behalf of an agency, (b) I clearly indicated as much, and (c) there were no grounds to even presume I asserted my own rights. So I shall also look at whether it could have reached such a determination.

There are three factors relevant to both questions: **(i)** whether I asserted a private right; **(ii)** whether I was fulfilling a federal function; **(iii)** whether I claimed an affiliation with Stars and Stripes.

**(i) Assertion of private rights.** In my initial request, I asked that records be provided to me "as a U.S. citizen, private party and representative of the news media," using first-person pronouns throughout and a number of other facts that pertain to me, personally. That is, I asserted a personal right of access.

It's entirely possible HQMC would have known of the work I have done for Stars and Stripes, as it's easily found on line. In my request, I cited a Twitter account I own, which lists a Stars and Stripes email address and links to a body of my work at the newspaper's website. None of this, however, establishes my status as an employee — as opposed to a contractor, for example. It's also doubtful FOIA administrators had knowledge of the latest personnel actions or plans within Stars and Stripes, which at the time of my request was facing imminent closure. And it's certain they had no knowledge of my personal employment plans or freelance proposals.

Beyond incidental knowledge or belief about my federal employment or mere suspicion of my motives coloring its determination, it's unclear what gave HQMC grounds for concluding I was employed by Stars and Stripes at the time of my request, let alone seeking records in any capacity as an employee of the organization. Denial of a citizen's rights would seem to require something more than speculation. Rather, any presumption should cut the other way, in favor of maximal disclosure, by considering my request an assertion of *personal* FOIA rights. As President Obama said in 2009, the clear operative policy for administration of the Act is: "In the face of doubt, openness prevails."

---

[36] *Sikes v. U.S. Dep't of the Navy*, 896 F.3d 1227.

But there should have been no doubt that I was acting on my own behalf, given the clear language of my certified FOIA request. I also reiterated this in subsequent correspondence. That should have sufficed to show I was not acting as the newspaper's employee, let alone its representative. I expressly argued in some detail, with reference to my own academic and professional history, that I personally qualified as a news-media requester, regardless of any affiliation with other news-media entities, including the Stars and Stripes.

As an award-winning journalist[37] with nearly a decade of experience, I have a legitimate personal interest in gathering and distributing news, regardless of where I am now employed or may be in the future. As the D.C. District has said, "private interests clearly drive journalists … in their search for news," which interests they advance "almost exclusively by dissemination of news," such that with any private benefit rises the public benefit.[38] Given that journalists' works generally carry their names (bylines), at least some part of that private benefit is reputational, so that I stand to gain by accessing and disseminating records that significantly contribute to public understanding of government activity.

I have a track record of publication in major news outlets such as The Associated Press,[39] Los Angeles Times[40] and NBC News,[41] and directly to an online audience of over 13,000 subscribers to my social media channels. Furthermore, I have fairly plentiful options for publishing work based on such records, given my track record and relationships with editors at outlets such as the New York Times, Military Times, Military.com and Task & Purpose, evidence of which I can provide if needed, though it may be independently ascertained by my social media activity. And, as I told HQMC in my initial request, I could also choose to publish directly to a segment of the public on my personal social media accounts, where I frequently share news, information and editorial comment that I gather, edit and publish in my spare time. In 2020, as a journalist with years of training and experience, those are but a small sampling of places I might publish.

All of that is to say that I have a more than adequate personal motive to seek out records under FOIA and to use them to public benefit in any number of ways I may choose. It is, after all, public data, and I am not bound by obligation to use the records on behalf of any federal agency. And, as the DoD has made no secret of its intentions to close Stars and Stripes at some point in the near future, perhaps even before I receive these records from HQMC, it makes little sense that I would seek them on its behalf. As a matter of fact, at the time I made my initial request, the newspaper was expected to cease publication within two months. I didn't even get a simple denial letter within that time frame.

**(ii) No federal function.** On top of the fact that I asserted personal rights and have obvious private interests here, in order to be considered an "employee" under the statutory definition I had to have been performing a federal function, subject to the supervision of another federal official. I cannot have been an employee then under those terms. As stated above, I made the request on my personal time, using my personal resources, citing my personal contact information, without reference to my official title or to any federal employment. I acted on my own initiative, without the knowledge or authority of any other person or entity.

---

[37] News21 Awards, 2013 Eppy Award and SABEW Best in Business award for "Back Home" project (https://news21.com/awards/).

[38] *Badhwar v. United States Dept. of Air Force*, 615 F. Supp. 698 (D.D.C. 1985).

[39] For example, "US panel to study Agent Orange residue exposure" by Chad Garland, May 14, 2014 (https://apnews.com/article/ed4b3ac56bad463885708a78243aa6ad).

[40] Staff profile at the Los Angeles Times, where I wrote for the community news section the Burbank Leader from 2014 to early 2016 (https://www.latimes.com/tn-bio-chad-garland-staff.html).

[41] "'Scoundrels … thieves … rip-off artists' flock to veterans charities" by Chad Garland and Andrew Knochel, Aug. 29, 2013 (https://www.nbcnews.com/news/world/scoundrels-thieves-rip-artists-flock-veterans-charities-flna8C11055138).

I expressly stated that I was acting in a private capacity, twice. Aside from the DoD memos, there's no provision of any currently published regulation, issuance of FOIA handbook that prohibits a federal employee from seeking records under the Act in an official capacity, nor any official guidance pertaining to their assertion of FOIA rights in a private or personal capacity. However, the websites for the FOIA offices of several DoD components advise federal civilian and military personnel not to use government resources or duty time when submitting requests.[42] So, too, do the FOIA offices of some other federal agencies.[43]

While HQMC's FOIA web page does not carry a similar warning, one may wonder why, if federal employees were barred from seeking records under the Act, the page says nothing about it, but does advise those filing a request from a U.S. Government computer not to select CAC certificates when prompted.[44] CAC certificates are loaded onto the ID cards of DoD personnel.

In any case, I made every reasonable effort to comply with all of the above online guidance while acting in a personal capacity, though it's not clear to me any of it constitutes published rules in the meaning given under FOIA.

Of course, as discussed, merely being a federal employee would not have been sufficient reason for denying my FOIA request. If I had, for example, used a government computer, the HQMC FOIA administrators had no authority to adjudicate questions about potential misuse of government resources, nor would such misconduct have been a valid reason to deny my request under any provision of FOIA law or policy that I can find.

However, some indication that I had used federal duty time, resources, official titles or addresses might support a conclusion or invite an inference that I acted on behalf of a federal agency. However, as discussed, as a general rule a representative must clearly indicate they are filing a request on behalf of another party for that party to be considered the requester. Again, mere presumption is not sufficient to deny a person records sought under the Act.

**(iii) No claim of affiliation with Stars and Stripes.** Again, as discussed above, I made no claim to represent any other party and did not even mention Stars and Stripes, except in passing reference to say I was *not* acting on its behalf. Stars and Stripes had no part in my request; were it somehow to my advantage now to claim otherwise, I could not retroactively *make it* party to an action on this matter, let alone establish it as the principal requester. Neither, I submit, can HQMC.

However, given that I claimed to be "a representative of the news media" while requesting a fee reduction, and given that HQMC asked whether I was acting in my "capacity as a journalist for *Stars and Stripes*" in the same context, I will briefly entertain the notion that FOIA administrators perceived that as a claim to represent the newspaper.

Such a conclusion is baseless. To reach this determination, first of all, HQMC would have had to ignore — or overcome with more than conclusory statements — my repeated and explicit claims to the

---

[42] See U.S. Air Force Compliance Division FOIA Handbook (https://www.compliance.af.mil/Library/Handbook/); U.S. Naval Air Systems Command FOIA Request Q's & A's (https://www.navair.navy.mil/foia/faq); the FOIA frequently asked questions page for USCYBERCOM (https://www.cybercom.mil/FOIA/FOIA-FAQ/), echoed by USINDOPACOM and USSTRATCOM as well; and USAREUR (https://www.eur.army.mil/FOIA/).

[43] See USDA FOIA FAQ (https://www.usda.gov/oascr/foia-frequently-asked-questions#file_request), stating that "Federal employees may not use government time or equipment when requesting information under the FOIA"; and U.S. Census Bureau FOIA presentation slides of March 2015 by Michael Toland, Ph.D. Census Bureau FOIA/Privacy Act Officer Chief, Freedom of Information Act and Open Government Branch (https://www2.census.gov/foia/events/2015-03/2015-03_Toland.pdf), stating at p. 31 that "[f]ederal employees can submit FOIA requests, but only as a private citizen," meaning they cannot do so during normal duty hours, using government equipment, or in his/her official capacity.

[44] See the HQMC FOIA web page (https://www.hqmc.marines.mil/Agencies/USMC-FOIA/).

contrary. It would've also had to ignore my repeated citation of my personal bona fides. I was clear, in other words, that I was both acting in a personal capacity and requesting that my status be judged on the basis of my own journalism activities.

What's more, asserting one is "a representative of the news media" is not an inherent claim of an agency relationship with any other party, especially an unnamed one. It is, in fact, much closer to the opposite. Determination of news-media status is to be made on the basis of the overall activities of the *requester* — that is, it pertains to the qualifications of the entity seeking the records, not its representative. The qualifications of any agent or counsel who files a request on another's behalf, no matter how legitimate, could not justify granting news-media status to the principal.[45] Thus, "representative" here describes the news-media requester. So, an attorney seeking records on behalf of a journalist, for example, would be a *representative of a* "representative of the news media."

It is further clear from the legislative history and regulatory context that the term refers not to an agent acting on behalf of another party, but to a member of a class or category of requesters — the "news media" — roughly equivalent to *the press*. Congress interprets it as an equivalent to "journalist."[46] Under 32 C.F.R. § 286, DoD's FOIA program uses "member of the news media" and "news media requester" as synonyms. Therefore, "representative" here takes the common and traditional meaning of "typical or characteristic example" or "a typical example of a group, class, or quality," i.e., "specimen."[47]

While at one time DoD defined "representative of the news media" as "a person actively gathering news for an entity organized and operated to publish or broadcast news to the public,"[48] that definition was obviated when Congress passed the OPEN Government Act of 2007 and gave the term its own definition. The current definition no longer requires either that the requester be "actively gathering news" or that he be doing so "for an entity organized and operated" to disseminate news. Hopefully HQMC is not basing its administration of the Act on this dated definition. Some 13 years ago, Congress incorporated a broader definition with the express purpose of including those who exercise First Amendment-protected freedoms as part of alternative media operations on the internet, such as "bloggers."[49]

Furthermore, news-media status pertains to procedural preferences, such as fee waivers, but is not to be used as a basis for determining the merits of the request itself. HQMC had the authority to consider my bona fides and overall activities, and to grant or deny me that status. To the extent it knew, suspected or believed I was or had been employed by Stars and Stripes, it could have considered whether that further supported my request, under a common sense understanding, as Congress intended under the 2007 act.[50] It could not, however, have used that information to deny me records.

That I sought the records for news gathering, moreover, in no way means my request was anything less than an assertion of my private FOIA rights — rights Congress has recognized as integral to the civil liberties of speech and press guaranteed under the First Amendment. In introducing a predecessor to the FOIA, Sen. Edward V. Long quoted James Madison, who was the chair of the committee that drafted the First Amendment, which Long also noted in the Senate report on the original

---

[45] See *Dale v. IRS*, 238 F. Supp. 2d 99, 107 (D.D.C. 2002), finding that "A party's counsel is not the 'requester' for purposes of a fee waiver."

[46] See *153 CONG. REC. 22,945 (2007)*, statement of Sen. Jon Kyl.

[47] See "Representative," at entry 1, meaning 3, and entry 2, meaning 2, in *Merriam-Webster.com Dictionary*, Merriam-Webster. Accessed 11 January 2021.

[48] See 32 C.F.R. § 286.28(e)(7)(i), dated July 1, 1999.

[49] See 153 CONG. REC. 22,945 (2007), statement of Sen. Jon Kyl.

[50] Id., in which Sen. Kyl advocates for broadening the definition without constraining it beyond "commonsense limits on who can claim to be a journalist."

FOIA bill.[51] Congress also acknowledged that the broad outlines for the FOIA were laid out by Dr. Harold L. Cross of the American Society of Newspaper Editors in the book "The People's Right To Know." It quotes Dr. Cross's foundational "conviction that inherent in the right to speak and the right to print was the right to know."[52] And, as the D.C. District has observed, Congress expressed a special preference in the legislation for journalists, the Americans who most frequently exercise the freedom of the press.[53]

It would be strange, indeed, if a private citizen were barred his rights under FOIA because he cited a history of exercising his civil liberties.

### D. Did HQMC have no alternative but to close my request and take no further action?

It should probably go without saying that, if HQMC was wrong about the rights of federal employees under FOIA, and about whether I filed my request as a federal employee, then it clearly had other options than to close my request and take no further action.

In fact, since I was acting in a private capacity and neither as an employee or representative of a federal agency, HQMC had ***no alternative*** but to process my request and release the records to me.

There were, however, some alternatives denied to HQMC: it had no option to consider my identity, my employment, or my intended use of the requested records as a basis for withholding them. It therefore did so improperly.

It's also worth noting that HQMC's claim here to have no alternative but to close a request from a federal employee suggests its FOIA officials believe they have an obligation under FOIA and DoD policy to prevent agency access that is so definitive as to require that they screen requesters to identify federal employees and disregard their explicit claims to be acting in a private capacity.

This is troubling, as it suggests HQMC would deny FOIA rights of over 2.5 million Americans without clearly delineated statutory authority to do so under the Act.

### (2) As a news-media requester, I deserved at least a partial waiver of fees, and HQMC relies on unreasonable demands for specificity to deny the full waiver of fees.

Just as I gave HQMC adequate grounds to conclude that I was seeking the records on my own behalf, I provided sufficient information about my skills, training, experience and overall activities for it to determine that I was a journalist, qualifying me for at least a partial fee waiver.

Moreover, my request for a full waiver on a public interest basis was both reasonably specific and non-conclusory, as required.[54] In fact, I will show that HQMC demands unreasonable specificity in denying my waiver request.

In the correspondence of 26 August 2020, Ms. Hughes states that HQMC considered the following factors in evaluating my fee waiver request, which are more-or-less the requirements listed in 32 C.F.R. § 286.12(l)(2)(i) and (ii), though worded differently:

---

[51] See S. Rep. No. 813, 89th Congress, 1st Session, Senate Committee on the Judiciary (Oct. 4, 1965) (S. 1160), at p. 37.

[52] See H. Rep. No. 1497, 89th Congress, 2nd Session, House Committee on Government Operations (May 9, 1966) (S. 1160), at p. 23.

[53] See *Badhwar v. United States Dept. of Air Force*, 615 F. Supp. 698 (D.D.C. 1985), in which the court finds the FOIA "indicates special solicitude for journalists, along with scholars and public interest groups."

[54] See *Nat'l Sec. Couns. v. DOJ*, 848 F.3d at 473 (D.C. Cir. 2017), holding that "[w]hile fee-waiver applications are to be 'liberally construed' in favor of finding that requesters meet FOIA's two-prong test, requesters still must justify their entitlement to a waiver of fees in 'reasonably specific' and 'non-conclusory' terms."

14

1. Does the record specifically concern identifiable operations or activities of the Government?
2. If so, is disclosure likely to contribute to public understanding of these operations and activities? Are the releasable contents of the record(s) meaningfully informative in relation to the subject of the request? For example, is this information of wide public interest and will your disclosure be unique in enhancing public knowledge?
3. Is the focus on contributing to public understanding rather than the requester's own understanding or that of a narrow segment of interested persons?
4. Will any likely contribution to public understanding be significant?

Ms. Hughes requested further information to determine my fee category. In both my original request and response to her question, I provided details about my education, skills, experience and publication history to support the determination of my noncommercial, news-media status. After listing the outlets that have published my work, noted my ability to publish directly to an audience of more than 12,000 subscribers. This should have been enough to qualify me for the news-media requester fee category, under which search fees are waived.

For the public interest fee waiver, well-established case law requires that fee-waiver applications from noncommercial requesters must be "liberally construed" in favor of a public interest finding, but must still be justified with "reasonable specificity" and based on more than "conclusory allegations."[55]

In support of my fee waiver request, in my original 14 August 2020 correspondence, I stated that disclosure to me of the various Bronze Star Medal with Valor awards materials ("Statements of Award (SOA), citations, certificates and/or accompanying narrative statements") would be in the public interest because they pertained to "military overseas contingency operations" and were likely to contribute significantly to public understanding of the "sacrifices and heroism American service members perform" often out of public view.

HQMC claims that "it is unclear how the actions of individual Marines would add to what the public already knows about Marine Corps operations" and that "much of this (requested) information is publicly available." This statement is somewhat ambiguous what prong or prongs of the analysis I failed to provide enough detail about.

It seems at least that HQMC understands disclosure was sought with a focus on informing a public audience (the third factor). Under 32 C.F.R. § 286.12(l)(2)(ii)(B), disclosure to a representative of the news media is presumed to meet the criteria of contributing to the understanding of a reasonably broad audience of the public.

It's somewhat less clear whether HQMC believes the records concern the identifiable activities of the Government (the first factor). The government also appears to doubt the disclosure would satisfy the second and fourth factors — whether the records would contribute to understanding of Government operations and whether that contribution would be significant.

I'll focus the below analysis on these three factors, namely: **(A)** whether the records concern identifiable operations or activities of the Federal Government; **(B)** whether disclosure would likely contribute to understanding of those operations or activities; and **(C)** whether that contribution to understanding would be significant.

### A.   Do the records concern identifiable operations or activities of the U.S. Government?

As regards the first factor, it should be obvious that "the actions of individual Marines" worthy of the Bronze Star with Valor directly concern Marine Corps operations, as by definition they are deeds performed during combat operations on behalf of the Government.

---

[55] See *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003).

Moreover, these are acts the service has singled out as meriting presidential recognition, deeming them so exemplary that they "reflect great credit" upon the individuals who performed them and upholding "the highest traditions of the Marine Corps and the United States Naval Services." They are, in other words, acts of bravery fully and publicly endorsed by the service.

It is for their quality as records of the "sacrifices and heroism" of Americans in service to their country that I said I was seeking them. Stating that these records pertain to government operations seems to me self-evident, not a "conclusory allegation." Moreover, the records themselves document the government activity of awarding, thus underwriting, the activities of these individual Marines.

Thus, disclosure of the requested information "would shed light" on these government operations and have a "connection that is direct and clear, not remote or attenuated."[56]

**B.   Is disclosure likely to contribute to understanding of those operations or activities?**

In addition to being obviously concerned with government activities, it should likewise be plain that documents generated to recognize these actions would contain information that would satisfy the second factor of adding to understanding.

I didn't think it would be necessary to spell out more explicitly that the statements, "citations, certificates and/or accompanying narrative statements" for valorous awards would contain meaningful information about the heroism of Americans serving their country. I didn't merely request cursory data about the awards, such as the number given. Rather, I sought a set of comprehensive documents for a period stretching back more than five years and concerning combat operations in at least two theaters.

These documents are specifically designed for publication, display and public reading, and by regulation they must contain details such as dates of award; dates and places of the actions; name of recipient; name of approving officer; assigned unit; accomplishment and attributes displayed; and details that show the value of the results achieved and that the achievements were sufficient to justify the award. The awards must include a detailed summary of action containing specific examples of performance. It's hard to imagine a record containing more meaningful information than that. As such, because of the information they contain, the records are of the type that are routinely sought by representatives of the news media. Similar documents (citations specifically) are typically collected in historic databases to inform public understanding of past military operations and significant actions.

It's also readily apparent that the Marine Corps deems a public interest in these activities and intends the awards to formally add to the public's understanding, as it frequently presents them publicly, with readings of the awards warrant, often taking and publishing photos. It even occasionally publishes press releases about them.

**C.   Is the contribution to understanding likely to be significant?**

HQMC appears to doubt that disclosure would contribute significantly to public understanding because "much of this (requested) information is publicly available." It does not say how or where this information has been made available to the public, however, nor how closely related the material available to the public is to the records I am seeking.

As I stated, these actions occur largely out of view of the American public — they occur in dangerous overseas combat zones. Thus, I believe these records would add much to what the public knows because they provide some of the only documentation of the heroic actions of the service members the U.S. sends to war in such far flung places.

---

[56] See 32 C.F.R. § 286.12(l)(2)(i).

Even if "much of this information" was already publicly available — and I will soon show why I believe it is not — that is not sufficient reason to deny my waiver request. "The mere fact that material is in the public domain does not justify denying a fee waiver," the D.C. Circuit has held. "[O]nly material that has met a threshold level of public dissemination will not further 'public understanding' within the meaning of the fee waiver provisions."[57] The information I am seeking has not met this threshold level.

Under DoD's FOIA program regulation, disclosure of information already in the public domain "in either the same or a substantially identical form" would not be considered meaningfully informative "if nothing new would be added to the public's understanding."

But if any of the information in the records I'm seeking is in the public domain, it is not in duplicative or identical form, and not "routinely available to the public in a library, reading room, through the Internet, or as part of the administrative record."[58] It is before the public in abstracted or piecemeal form in occasional newspaper articles, or in press releases and photo captions on marines.mil or dvidshub.net.

There is little evidence, in fact, that the Marine Corps has made freely available, on a wide basis, the information I requested about all Bronze Star Medals with "V" devices that have been awarded in the past five years in anything but "the grossest sense."[59] Frequently, the service publishes only photos of the awards event online with vague captions. When additional information is made available, it is often minimal and almost never of the same extent as in an awards packet. For example, a news story on marines.mil from 9 February 2016 includes only one sentence directly quoted from the awards citation for a Bronze Star presented for a 2011 incident in Afghanistan.[60]

There is evidence to suggest a number of other Bronze Stars have been awarded since 31 December 2014, about which the public has little or no knowledge because the Marine Corps has released the information only to a small number of people, if at all. The Marine Corps Times reported on 15 May 2019 that Marine Forces Central had approved at least four Bronze Star Medals for Operation Inherent Resolve (OIR).[61] That story is about the fourth of them, the ceremony for which is documented in photos on dvivdshub.net without any apparent narrative information about the events leading to the award. The Times "obtained" the citation, but it does not disclose how, nor is that citation easily accessible by the public on its site. The dates of award, dates of action, names of recipients, award narrative, and other citation information for the other three awards is not included in the story.

A search for "bronze star medal with valor" on the Defense Department's imagery and press release repository, dvidshub.net, turns up only three news releases for awards since about the date OIR officially began in Iraq and Syria through the date of HQMC's 26 August 2020 correspondence.[62] But all three were awarded for actions in Afghanistan, and no such releases are available for dates after June 2015. After removing the words "medal with valor" from the search phrase, we find an additional five releases pertaining to the presentation of medals awarded for combat valor during that period: one for OIR (to Maj. David Palka), three for actions in Afghanistan (including the one mentioned above from

---

[57] See *Campbell v. United States Dep't of Justice*, 164 F.3d 20, 36 (D.C.Cir.1999).

[58] See *Forest Guardians v. U.S. Dep't of Interior*, 416 F.3d 1173, 1181 (10th Cir. 2005).

[59] Id.

[60] See "BRONZE STAR AWARDED TO LEJEUNE MARINE"
(https://www.marines.mil/News/News-Display/Article/652771/bronze-star-awarded-to-lejeune-marine/).

[61] See "Marine in vehicle hit by an ISIS anti-tank guided missile earns Bronze Star for valor in Syria," Marine Corps Times, May 16, 2019
(https://www.marinecorpstimes.com/flashpoints/2019/05/16/marine-in-vehicle-hit-by-an-isis-anti-tank-guided-missile-earns-bronze-star-for-valor-in-syria/).

[62] Link to search:
https://www.dvidshub.net/search/?q=bronze+star+medal+with+valor&filter%5Bbranch%5D=Marines&filter%5Btype%5D=news&view=grid&filter[date]=20140601-20200827

marines.mil), and one for actions in Japan during World War II. The remainder that pertain to the presentation of awards are for medals without a "V" device.[63]

Similar searches for photos during that period uncover several photo series about Marines awarded Bronze Star Medals with "V" for actions in Afghanistan, one for OIR (which is only known by looking at the dates on a photograph of the certificate), and one that contains no information about the when or where the heroic actions took place (though it turns out it is the one award reported by Marine Corps Times as mentioned above).[64] This indicates that the Marine Corps has made available to the public the citations or similar information for only one of the four Bronze Star Medals with "V" devices awarded for actions in Iraq or Syria between June 2014 and May 2019 — the one for Maj. Palka.

It is unclear to me (and likely to the public) how many other award citations and acts of heroism the Marine Corps has failed to disclose details of under such reticence during the search period of my request (such as for operations Iraqi Freedom, Enduring Freedom, New Dawn, Resolute Support and Freedom's Sentinel, to name just the major operations).

The amount of data available in the material provided on dvidshub.net and marines.mil during the search period of my request varies widely, as a release from June 2015 provides a rather full description of the actions for which a Bronze Star was awarded,[65] as do releases about an award presented in October 2014 for actions in Afghanistan in 2013,[66] and an award presented in April 2015 for actions in Afghanistan in 2012.[67] But two Bronze Stars awarded posthumously in 2014 for actions in 2011 are given passing reference in the story of a Navy Corpsman awarded a Navy Cross,[68] and the award of a Bronze Star Medal with "V" device for combat conditions in Iraq in 2014 receives no apparent description of the actions it recognized.[69] In one case, a press release contains a single sentence describing "one of the many actions" in Helmand province, Afghanistan, for which the award was given,[70] but does not describe any of the others. The awards packages for all of these medals are likely to include significantly more information.

Records of such valorous achievements are no more easily accessible through nongovernmental sites. The Hall of Valor, billed as "the world's largest public database of American military award citations," does not allow a search by conflict unless a user enters a first or last name of the recipient.[71] A search on Google using the appropriate operators allows one to circumvent this limitation, revealing the

---

[63] Link to search:
https://www.dvidshub.net/search/?q=bronze+star&filter%5Bbranch%5D=Marines&filter%5Btype%5D=news&view=grid&filter[date]=20140601-20200827
[64] See DVIDS search linked here:
https://www.dvidshub.net/search/?q=bronze+star+medal+with+valor&filter%5Bbranch%5D=Marines&filter%5Bdate%5D=20141001-20200827&filter%5Btype%5D=image&view=grid
[65] See "Marine with BLT 2/6 awarded Bronze Star"
(https://www.dvidshub.net/news/165945/marine-with-blt-2-6-awarded-bronze-star).
[66] See "Bronze Star awarded posthumously to Marine for valor in combat"
(https://www.dvidshub.net/news/145615/bronze-star-awarded-posthumously-marine-valor-combat).
[67] See "MARSOC Marines recognized for valor in combat"
(https://www.dvidshub.net/news/159932/marsoc-marines-recognized-valor-combat).
[68] See "Reconnaissance Corpsman Receives Navy Cross"
(https://www.dvidshub.net/news/148843/reconnaissance-corpsman-receives-navy-cross).
[69] See "Bronze Star ceremony, Lance Cpl. Steven Land [Image 5 of 11]"
(https://www.dvidshub.net/image/2085132/bronze-star-ceremony-lance-cpl-steven-land).
[70] See "Mohave Valley Marine receives Bronze Star for Valor"
(https://www.dvidshub.net/news/162187/mohave-valley-marine-receives-bronze-star-valor).
[71] See https://valor.militarytimes.com/.

fourth Bronze Star Medal with "V" device awarded for OIR.[72] In other words, a user would have to have somewhat specialized knowledge of Google search operators to uncover a record they didn't already have some knowledge about. But this search also reveals that even a knowledgeable Google would not find the citations for the other three Bronze Star Medals with "V" awarded under OIR in that database. Indeed, even searching for the medals with the names of the recipients (David Palka, Steven Land and John Williams) turns up zero results.

Google-assisted searches of the database seeking similar awards for actions during operations Freedom's Sentinel and Resolute Support turn up just four total results for all services, not just the Marines, but there have been reports in the news of at least that many Bronze Stars with "V" devices awarded in a single event,[73] which shows just how limited the "world's largest public database" is as it concerns the citations for such medals.

Lastly, given that my request is for potentially numerous records of the same type, taken together the information contained in them and the data about the records themselves, such as dates, signatories, etc., could reveal significant information about how the Marine Corps awards its personnel and about potential patterns in awards for enlisted versus officers, perhaps, which information would not readily be apparent from a request for a single record and which would have dubious reliability if pieced together from the spotty public record of awards accessible on government and commercial websites. As there is no similar collection of published awards materials for the period, the new insights such information could provide would likely be significant.

One could not be confident, from a search of available sources, that the Marine Corps had released all of the available information about all of the Bronze Stars with "V" devices awarded since 31 December 2014.

Therefore, much, if not most, of the information in the records I requested is not readily available to the public in the same or substantially similar form already, contrary to HQMC's claim.

All of the above belabors the point that my request for a waiver, based on non-conclusory information, was reasonably specific enough for HQMC to conclude that there was a public interest sufficient to merit a waiver or reduction of fees. Rather than liberally construe my request for fee waiver, however,the government seems to have expected me to provide explicit detail as to how the records would inform the public about the heroism of American service members when the information in those records is from largely unknown activities out of public view, as my original request stated.

Thus, it seems HQMC is relying on precisely the type of "roadblock and technicalit[y]"[74] that led Congress to liberalize the fee waiver provision in the first place.

---

[72] See this search:
https://www.google.com/search?q=site%3Ahttps%3A%2F%2Fvalor.militarytimes.com+%22bronze+star%22+%22operation+inherent+resolve%22&rlz=1C5MACD_enUS517US517&oq=site%3Ahttps%3A%2F%2Fvalor.militarytimes.com+%22bronze+star%22+%22operation+inherent+resolve%22&aqs=chrome..69i57j69i58.13166j0j4&sourceid=chrome&ie=UTF-8

[73] See "7th Special Forces Group awards valor medals to soldiers after tough Afghan deployment," Army Times, Jan. 10, 2020
(https://www.armytimes.com/news/your-army/2020/01/10/7th-special-forces-group-awards-valor-medals-to-soldiers-after-tough-afghan-deployment/) and "Army special operators receive 34 valor awards for combat actions in one Afghanistan deployment," Army Times, Oct. 2, 2019
(https://www.armytimes.com/news/your-army/2019/10/02/army-special-operators-receive-34-valor-awards-for-combat-actions-in-one-afghanistan-deployment/).
[74] See 132 CONG. REC. 31,415 (1986), Sen. Leahy's comments.

**Conclusion**

Whatever rights Stars and Stripes and its agents and representatives may or may not have under FOIA, federal employees like me have rights as private citizens to seek public records under the Act and to do whatever we please with the information we obtain once it is in the public domain. The language of my request and my use of personal resources make clear that I was acting on my own behalf. Moreover, my identity, motives, intentions and the intensity of my desire for the records otherwise has no relevance to my requests' merits and cannot form the grounds for denying disclosure.

It's unclear what informed HQMC's determination in this matter, but in that it allowed incidental knowledge of my affiliation with Stars and Stripes to color its decisions, it withheld the records on the basis of a flawed and prejudicial analysis, under presumptions counter to the FOIA's inherent bias toward disclosure.

The sole element of HQMC's denial rationale that as a clear foundation in law or regulation is the policy against Stars and Stripes or other federal agencies from using FOIA to obtain official information. There is neither "clearly delineated statutory language," nor any DoD rule or regulation, for denying federal employees their FOIA rights in their official capacity, and certainly not in their private capacity. Indeed, HQMC's decision on whether to withhold or disclose records turns on *who* requested them, rather than on the exemption of the records from release or any failure to adhere to the rules or procedures for requesting them.

In light of these circumstances, I respectfully ask that this request be remanded to HQMC for processing on its merits as a proper FOIA request. I also ask for a waiver of any fees on the basis of my status as a member of the news media and the public interest served by disclosure to me.

Thank you for your prompt consideration of this appeal.


Respectfully,



Chad Garland
(c) 443-745-3240 || chadgarland@msn.com



Encl.: HQMC final disposition letter (1), HQMC denial of fee waiver (2), original FOIA request (3), DoD FOIA director memo of 13 April 2018 (4).

Salzstr. 4
67657 Kaiserslautern
GERMANY

February 12, 2021

Judge Advocate General (Code 14)
1322 Patterson Avenue SE, Suite 3000
Washington Navy Yard DC 20374-5066

Hi there,

This is an appeal under the Freedom of Information Act of the Headquarters U.S. Marine Corps FOIA Office's 22 December 2020 denial of my FOIA request, identified by the file number **DON-USMC-2020-011524** (Enclosure 1).

My request sought "Statements of Award (SOA), citations, certificates and/or accompanying narrative statements for all Silver Star Medals awarded since December 31, 2014" and "Statements of Award (SOA), citations, certificates and/or accompanying narrative statements for all Purple Heart Medals awarded since December 31, 2014" (Enclosure 2 & Enclosure 3).

In response to this request and three others, Michael L. Peters of HQMC FOIA/PA programs wrote that officials had no choice but to close these requests and take no further action because "you are an employee of the Stars and Stripes." Mr. Peters cites the statutory definition of "any person," stating that federal agencies excluded from that definition, including entities within the Department of Defense, may not file FOIA requests. He does not cite the evidence upon which HQMC determined I was a Stars and Stripes employee or that I had made the request in that capacity.

HQMC appears to disregard my personal rights. I stated that I was acting on my own personal behalf, and I submitted the request using private resources and unpaid off-duty time, on my own initiative and for my own purposes.

I find it necessary to appeal this adverse determination on the grounds that HQMC improperly withheld the requested records. I will provide the factual background to this request before proceeding to explain why I believe HQMC's denial was improper, in that it was based on factors that are both immaterial under FOIA in general, and which are specifically irrelevant to this case.

**Factual and Procedural Background**

No one other than me had any prior knowledge of my intent to seek these records, nor did anyone give me permission, guidance, direction, consent or approval to request them via FOIA or any other means.

In all correspondence on these matters, I have used my personal email addresses chadlygarland@gmail.com and chadgarland@msn.com (both of which I personally created and have owned and operated myself for better than a decade). I used a personal computer and commercial internet services that I paid for out-of-pocket at my personal residence. I wrote in the first person, using the personal pronouns "I" and "me." The signature block listed my name, residential address in Germany, personal email address and personal cell phone number. I sent the correspondence during my personal free time (off-duty hours). I cited no employer, official position title, official address or official duty location. I made no claim to represent anyone other than myself or to be acting on behalf of anyone.

I submitted the requests in two separate emails, both sent at 23:53 local time on 25 August 2020 (after coming home from work). I requested copies of the records be provided "to me, a U.S. citizen, as a private party and representative of the news media." I stated my personal willingness to pay fees.

To establish my news-media status, I cited my personal qualifications, recapping the elements of 5 U.S.C. § 552(a)(4)(A)(ii) and 32 C.F.R. § 286.12(6) that define the term "representative of the news media," and noting that a determination is to be based on "the person's overall activities, not employment status, intent to publish, or affiliation with a larger organization or entity." I also noted that where a requester might not have a contract or firm plans to publish, as in my case, the Act allows the government to consider publication history as demonstrating a basis for expecting an ability to publish.

After certifying the request as true to the best of my knowledge and belief, I asked that all subsequent correspondence be directed to me, at my personal email address, chadgarland@msn.com. I signed the request with my own name and no others. I made no claim to be in an official capacity or to be acting on behalf of Stars and Stripes in any capacity.

In HQMC's 22 December 2020 final disposition letter, Mr. Peters stated that Stars and Stripes "and its employees do not qualify as requesters under the FOIA," and that "[s]ince you are an employee of the Stars and Stripes, we unfortunately have no alternative but to close these requests and take no further action."

At 22:51 local time that day, I asked HQMC for further information about this determination. I also asked that officials reconsider the administrative closure, allowing until the end of the day 23 December 2020 for a response. I have heard none.

### HQMC improperly withheld the requested records

I might save you a lot of reading in this section by summing up my point thus: The HQMC FOIA office's denial is improper because it turns on *who I am*. As the 11th Circuit observed in *Sikes v. Navy* a few years ago, "the Supreme Court has made clear that 'the identity of the requesting party has *no bearing* on the merits of his or her FOIA request.'"[1]

At issue is whether HQMC exercised its proper authority when it administratively closed my request on the basis of my actual or alleged federal employment. I submit that it did not, as it had no authority to consider my employment in making its decision, and as I made this request in a private or personal capacity and in compliance with all published rules and procedures for doing so.

The FOIA establishes the right of "any person," enforceable in court, to access government records subject to the Act. The courts have repeatedly found that the legislation's purpose is "to establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language,"[2] and that the only significant limits on the exercise of FOIA rights are the nine exemptions.[3] Upon *any* request, an agency's duty to provide the records promptly to "any person" is conditioned on whether the request (1) is made in accordance with published rules stating the time, place, fees and procedures to be followed, and (2) reasonably describes the records sought.[4] Except where specified, the Act "does not authorize the withholding of information or limit the availability of records to the public."[5]

---

[1] See *Sikes v. Navy*, 896 F.3d 1227, 1234 (11th Cir. 2018), quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press* , 489 U.S. 749, 771, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) (emphasis in the original).
[2] See *Federal Open Market Comm. v. Merrill*, 443 U.S. 340 (1979), at 351, citing S. Rep. No. 1219, 88th Congress, 2nd Session (S. 1666).
[3] See *Military Audit Project v. Casey*, 656 F.2d 724 n.11 (D.C. Cir. 1981).
[4] See *Department of Justice Guide to the Freedom of Information Act* at pp. 23-24.
[5] See 5 U.S.C. § 552(d).

There is no *clearly delineated statutory language* denying federal employees their personhood or FOIA rights. Moreover, there appears to be no clear published rule currently in force regarding the time, place, fees or procedures specifically for federal employees as pertains to FOIA requests. Indeed, HQMC cites no failure on my part to reasonably describe the records sought, no exemption or exception allowing it to withhold those records, nor any published procedural requirement that I failed to follow.

The crux of the government's denial is the statutory definition of "person," which excludes any "agency" of the U.S. Government. HQMC states conclusively that this disqualifies employees of DoD entities from seeking records under the Act. It provides the following rationale: "The Stars and Stripes Newspaper is an organization within the Department of Defense (DoD). As such, it and its employees do not qualify as requesters under the FOIA. ... Since you are an employee of the Stars and Stripes, we unfortunately have no alternative but to close these requests and take no further action."

In order for this determination to be right and proper, four elements must be true: **(A)** that the Stars and Stripes Newspaper is an organization within the DoD that does not qualify to request records under the FOIA; **(B)** that its employees do not qualify as requesters under the FOIA; **(C)** that I made my request as its employee; and **(D)** that, because of (B) and (C), HQMC had no alternative course of action.

### A.   Is the Stars and Stripes Newspaper an organization within the DoD that does not qualify as a requester under the FOIA?

The first element is well supported by federal laws and regulations, as 32 C.F.R. § 246 establishes Stars and Stripes as a joint-service nonappropriated fund instrumentality within the DoD, which does not fall under the definition of "person" as defined in 5 U.S.C. § 551(2). I concur with HQMC that this does not qualify the Stars and Stripes organization to invoke FOIA, but I dispute the logic as to how. The Act itself does not contemplate restrictions on U.S. Government access, it only establishes the rights of persons.[6] What excludes federal agencies like Stars and Stripes are rules DoD establishes to that effect under authority granted under the Act, which enshrines no rights or privileges to the contrary.

DoD Manual 5400.07 states that FOIA "may not be used by federal agencies seeking official information."[7] The manual further defines "FOIA requester" as specifically excluding agencies within the Executive Branch of the U.S. Government. Additionally, the version of 32 C.F.R. § 286 in effect up to at least 2016 stated that the "provisions of the FOIA are reserved for persons ... as opposed to U.S. Federal Agencies."[8] Likewise, a Department of the Navy FOIA program regulation that was in force prior to around July 2018 stated that "[n]either Federal agencies nor fugitives from justice may use the FOIA to access agency records."[9] Though these particular regulations have been removed, there have been no changes to the law that would contravene those particular statements.

DoDM 5400.07 incorporates as the definition of "federal agency," by reference, the same definition Congress uses for "agency" within the FOIA, taken from 5 U.S.C. § 551(1), which includes executive and military departments.[10] Thus, the above DoD policy grants HQMC authority to dismiss requests from Executive Branch entities such as Stars and Stripes.

### B. Do Stars and Stripes employees qualify as requesters under the FOIA?

---

[6] See *Federal Bureau of Investigation v. Abramson,* 456 U.S. 615, 631 n.14 (1982), where the court observes that "FOIA is legislation directed at securing public access to information, not an Act intended to interdict the flow of information among Government agencies."
[7] See DoDM 5400.07 of January 25, 2017, section 6, para. 6.1.a.
[8] See 32 C.F.R. § 286.22(b) and DoD 5400.07-R of September 1998, at paragraph C5.1.2.
[9] See 32 C.F.R. § 701.3(c).
[10] See 5 U.S.C. § 552(f)(1).

We cannot conclude that the above means individual federal employees lack FOIA rights. In fact, because **(i)** employees are persons, and **(ii)** HQMC lacks the authority to even consider federal employment as a factor affecting a requester's rights, federal employees have the same rights as "any person"; but, **(iii)** this question warrants special analysis of DoD policies regarding Stars and Stripes.

**(i) Employees are persons.** As used throughout Title 5, "employee" is defined as "an officer and individual" who meets three clear criteria: he or she must be (a) appointed in the civil service by a duly authorized official; (b) engaged in the performance of a Federal function under authority of law or an Executive act; and (c) subject to the supervision of an individual listed as one of the duly authorized officials under criterion (a) while performing the duties of his position.[11]

Because Congress incorporates into FOIA the definition of "agency" from 5 U.S.C. § 551(1) cited above, the courts also rely in that context on the definition of "person" from 5 U.S.C. § 551(2) — which HQMC cites in its denial letter — that is: "an individual, partnership, corporation, association, or public or private organization other than an agency."[12] DoDM 5400.07 incorporates this same definition by reference.

The term "individual," as used in any Act of Congress, or in any ruling, regulation, or interpretation of a U.S. Government entity, has the same meaning as "person," "human being," and "child," in that they are all terms defined in 1 U.S.C. § 8 to include all infant members of the species homo sapiens who are born alive at any stage of development. All federal employees were born alive at some stage of development.

Thus, throughout 5 U.S.C. (including FOIA), an "employee" is an individual, which is a person, which is not an agency. As the FOIA establishes the right of "any person" to access public records, it follows that agency employees have rights to request information under the Act as persons. There are, in fact, only three narrowly tailored exceptions to the legislation's broad "any person" standard, none of which is predicated on a requester's employment with the U.S. Government.[13] Indeed, the Department of Justice has determined that even in an official capacity a federal employee would be considered a "person" under the terms of the Act, even if the agency employing them would not be.[14]

There is a precedent for distinguishing between an individual's access rights and those of the U.S. Government institution in which they serve. In particular, requests made by members of Congress, *even "clearly acting in a completely official capacity*," are to be treated the same as those from "any person." Only "duly authorized" requests from the legislative body itself, such as those submitted through committee chairs, fall under the provisions of 5 U.S.C. § 552(d).[15] Thus, even where Congress may have greater right of access than that afforded by FOIA, its members individually have no less a right than other persons under the Act.

---

[11] See 5 U.S.C § 2105(a).

[12] See 5 U.S.C. § 551(2).

[13] See *Department of Justice Guide to the Freedom of Information Act* at pp. 19-21, which describes the narrow exceptions to the "any person" definition as fugitives from justice seeking records pertaining to their fugitive status, foreign governments or international government organizations and their representatives seeking records from agencies of the intelligence community, and persons who have waived FOIA rights under a plea agreement.

[14] See *FOIA Update*, Vol. VI, No. 1, dated January 1, 1985, which states that "a FOIA request received from an employee of another federal agency, even one acting in his official capacity, would be a request from a 'person' and would therefore satisfy ... the technical requirement of the FOIA ..."

[15] See *FOIA Update*, Vol. V, No. 1, dated January 1, 1984, which states that "when an agency receives a FOIA request from a Member of Congress, it should first determine whether it is a duly authorized request on behalf of Congress through a legislative committee or subcommittee" and that "if the request is not an official committee or subcommittee request, then the agency should process it as a request from 'any person.'"

If, as the Justice Department has said, a federal employee meets the technical definition of "person" and may assert FOIA rights in his official capacity — indeed, nothing in DoD Directive 5400.7, DoD Manual 5400.07, 32 C.F.R § 286 or the DoD FOIA Handbook explicitly states they could not — it would be all the more true that they may assert such rights when off-duty or in a personal capacity. An individual would not meet two of the three criteria of "employee" under Title 5 when not performing a federal function subject to supervision of another employee. Published rules for the DoD and DoN FOIA programs show support for such a reading of the law, at least until the DoD FOIA program regulation in 32 C.F.R. was overhauled to incorporate provisions of the OPEN Government Act of 2007 and the FOIA Improvement Act of 2016, neither of which changed the underlying basis for such a conclusion.

Up until 2018, DoN's FOIA regulation stated that "[w]hile authority may exist to disclose records to individuals in their official capacity, the provisions of the instruction in this part apply if the same individual seeks the records in a private or personal capacity."[16] Prior to 2017, 32 C.F.R. § 286 included a similar statement.[17]

As the FOIA is concerned with establishing a public right of access, broadly conceived, it follows that such rights would extend to those Americans employed by the U.S. Government, the largest single employer in the United States. It makes little sense that records would be made available to the general American public *and foreign nationals*, to include even America's enemies, but not to the millions of citizens and nationals in the civil service who have sworn allegiance to the country.

**(ii) HQMC lacks authority to consider employment as a factor.** What's more, neither the FOIA nor any DoD regulation allows the government to distinguish between requesters by employment or duty status.

First, requesters are not required to disclose details of their employment or duty status, why they are seeking the records, or what they plan to do with them. But even if that information were known to FOIA administrators, *it is immaterial*, as the Supreme Court has repeatedly held such factors cannot be used as grounds to withhold (or disclose) records. A person's particular reasons for seeking access have no bearing on their rights of access, as the Supreme Court held in *NARA v. Favish*:

> [A]s a general rule, when documents are within FOIA's disclosure provisions, citizens should not be required to explain why they seek the information. A person requesting the information needs no preconceived idea of the uses the data might serve. The information belongs to citizens to do with as they choose. Furthermore, as we have noted, the disclosure does not depend on the identity of the requester. As a general rule, if the information is subject to disclosure, it belongs to all.[18]

Further, the courts have found that an inquiry into the identity of the requester and the circumstances of their request would constitute a weighing of "the benefits and evils of disclosure" on a basis Congress did not invite.[19] The FOIA "was not intended to be applied on such an individualized basis," the 2nd Circuit held, as Congress created a scheme of categorical exclusion through exemptions.[20]

Indeed, from those nine exemptions alone arise "[t]he only important limitations on the exercise of the rights provided by the Act," the court has held.[21] As the exemptions pertain to the request, not the requester, they are not dependent on the employment status of the person seeking access.

---

[16] See 32 C.F.R. § 701.5(f)(5).

[17] See 32 C.F.R. § 286.4(f).

[18] See *NARA v. Favish*, 541 U.S. 157, 172 (2004).

[19] See *FBI v. Abramson*, 456 U.S. 615, 631 (1982).

[20] See *United Technologies Corp. v. F.A.A*, 102 F.3d 688 (2d Cir. 1996), citing *FBI v. Abramson*.

[21] See *Military Audit Project v. Casey*, 656 F.2d 724 n.11 (D.C. Cir. 1981).

And, at least as regards Stars and Stripes reporters, published DoD regulations forbid the use of the U.S. Government status of those journalists to block the release to them of otherwise releasable information.[22]

**(iii) A special analysis of DoD policy statements.** Before closing this question, a set of DoD memos the Pentagon's top FOIA officials have sent over the past 30 years merit separate analysis, as they specifically concern requests from the Stars and Stripes or its personnel. Though Mr. Peters does not cite any of this guidance, it likely informs HQMC's presumptive denial.

I can only speak here to three memos that I have been able to review — those from 1991 and 1999, which are published online,[23] and a 2018 issuance provided to me in September (Enclosure 4). The 1999 memo suggests the existence of another similar memo from 1993, but I've never seen it.

First, I find the same flaws in the DoD guidance that I've already noted in HQMC's denial rationale, at least as far as DoD appears to conflate the notion "'*person' excludes 'agency'*" with the unfounded assertion "'*person' excludes 'federal employee.'*" (Emphasis in the below three paragraphs is mine.)

The earliest DoD memo states that, "as [the Stars and Stripes Newspaper is an organization within DoD], its personnel do not qualify as requesters under the FOIA." Citing the statutory definition of "person," this memo states that "a federal agency, **or a representative of a federal agency** may not serve a FOIA request on its own agency, or another federal agency." It directs components that receive a FOIA request "from **representatives** of the Stars and Stripes" to inform them of this definition before advising them "to seek their information through official channels, apart from the FOIA."

The 1999 correspondence directs FOIA administrators to "advise your components once again that Stars and Stripes personnel, **as representatives of a Federal Agency**, may not request information under FOIA." This memo cites no explicit legal basis, but its reference to the 1991 memo suggests reliance on the same interpretation of the law, turning on the "person" standard.

Citing a 25-year history for its policy, DoD in 2018 states that "**any representative** of the Stars and Stripes cannot use the FOIA to gain access to DoD information." Again citing the Act's "person" standard, this memo reiterates that "a federal agency, or **a representative of a federal agency**, may not submit a FOIA request to a federal agency." The memo advises FOIA officials that, upon receiving a request "from the Stars and Stripes, you should close it as 'not a proper FOIA request'" and "advise [Stars and Stripes] that they should seek the information through another [sic] outside of the FOIA."

Despite titles and contents suggesting they pertain to requests received from Stars and Stripes and to an agency's response to that organization, the policy would on its face bar *any civil or uniformed service member* from seeking records under FOIA. It would violate due process and equal protection to only enforce this policy against Stars and Stripes. Thus, if the status of Stars and Stripes as an organization within DoD is sufficient to find that "its personnel do not qualify as requesters under the FOIA," then the same must apply to all other DoD personnel.

This cannot be true. The memos are framed not as new policy, but as reminders of existing policy dating to at least 1991. But existing regulations at that time and in 1999 included the explicit provision, previously referenced at **B.(ii).** above, recognizing that, "while authority may exist to disclose records to individuals in their official capacity, the provisions of this Part apply if the same individual

---

[22] See 32 C.F.R. § 246 App. D, paragraph C.2.a.

[23] See DoD Directorate of Freedom of Information and Security Review memorandum 99-CORR-006 "FOIA requests from the Stars and Stripes" of 19 January 1999 and Office of the Secretary of Defense memo 91-CORR-126 "FOIA Requests from the Stars and Stripes newspaper" of 1 August 1991, available on the DoD Open Government FOIA Resources webpage (https://open.defense.gov/Portals/23/Documents/starstrp.pdf).

seeks the records in a private or personal capacity."[24] Moreover, Defense Contract Audit Agency, a component under DoD, stated explicitly in its FOIA program regulation at the time that "DCAA organizational elements will consider FOIA requests from [Federal agency officials, among others] as made in a private, rather than official capacity, and will make disclosure and fee determinations accordingly."[25] Notably, this is consistent with treatment of requests from Congress members.

Even the regulation governing the Stars and Stripes, effective since 1993, recognizes a distinction between requests made by the organization and those made by its personnel. It states that a "**Government organization** may not file a request for information against another Government organization," but that "it is the responsibility of all commands to honor the DoD Principles of Information, particularly regarding the intent of open access as described in [DoD's FOIA program regulation] when responding to queries from Stars and Stripes **reporters**." The emphasis here is mine. Of note, the DoD Principles of Information require that the FOIA be supported in both letter and spirit, stating that the only grounds not to release information is that such release is "precluded by national security constraints or valid statutory mandates or exceptions." There is no statutory exception pertaining to Stars and Stripes reporters.

Moreover, just as DoD regulations forbid officials from using Stars and Stripes reporters' U.S. Government status to block release of records to them, they bar the reporters themselves from using their government status or credentials "to gain special treatment … or other advantages that are not given equally to civilian media." These two prongs would bar both elements of the DoD memos — the treatment of a reporter's request as that of a "representative of a federal agency," and the direction that they seek the records via a method available to federal agencies and not the civilian media. As the FOIA provides that records must be promptly disclosed upon "any request," regardless of whether it explicitly invokes the Act, the DoD memo's direction that Stars and Stripes seek the records via "official channels, apart from the FOIA" or "outside of the FOIA" must be referring to an assertion of official government privilege or authority not available to those outside of the U.S. Government.

Given that DoD regulations were implemented according to a rule-making process, published in the Federal Register and subject to public comment, and given that the memos were not — and are not meant to override regulations — the 30-year DoD policy must be meant to comport with the overall rule that federal employees *may seek records under FOIA "in a personal or private capacity."* We can also reasonably conclude that DoD would not have sought to impose via memo a policy limiting access by "any person" further than is specifically authorized by Congress, which could draw a legal challenge from persons whose rights were limited. Thus, employees have private rights. For these memos to have any meaning that isn't violative of those rights, they must pertain to submissions that do not assert personal rights.

In fact, I submit the formulation "representative(s) of a federal agency" used in several of the memos, as opposed to simply "employee" or "personnel," must be a significant phrase, particularly as it's used in the two memos that expressly describing the legal foundation for the policy. Both the 1991 and 2018 memos also refer to "representatives" or "any representative" of Stars and Stripes. As I will show, *representative* is not synonymous with *employee* under the Act. Had DoD intended to bar mere employees from seeking records, it could have simply omitted such phrasing. We must, therefore, examine its particular meaning.

There is no definition of "representative of a federal agency" given under FOIA. As already discussed, DoD gives "federal agency" the same meaning under its FOIA program as Congress gives "agency," so our understanding of the entire phrase hinges on the meaning of "representative." In its common and traditional sense, it could refer to a member of a legislature or to "someone who stands for

---

[24] See 32 C.F.R. § 286.4(f).
[25] See 32 C.F.R. § 290.7(e)(4).

or acts on behalf of another," i.e. an *agent*.[26] In the FOIA context specifically, the term is used in four ways: [1] "a representative of a government entity" other than a State, territory, commonwealth, or district of the United States, or any subdivision thereof, in § 552(a)(3)(e)(ii); [2] "a representative of the news media" as defined in § 552(a)(4)(A)(ii); [3] a representative of a federal officer or employee under § 552(a)(4)(f)(i); and [4] in references to the "House of Representatives" under § 552(e) and (h).

The use closest to that of the sense in the DoD memos is the first of these, as it concerns a government entity. It is also the only use that creates an exception to the broad "any person" standard under the FOIA. Conveniently, the statutory meaning has been adjudicated, at least as it concerns those who seek records on behalf of foreign governments. Specifically, in 2014 the D.C. Circuit found that interpreting "representative" as equivalent to "official," "employee" or "affiliate" would be too vague.[27] The court found more narrowly that those who have the authority to file FOIA requests on behalf of a government entity are "representatives" of such entities when they submit requests "of the sort they have authority to file."[28] Notably, this definition would also apply to non-employees, such as elected legislators. The court arrived at its decision after reviewing the term's common and traditional meaning as referring to an agency relationship, whereby one party is subject to the control of and acting in accordance with instructions of a principal party. In support of its decisions, the court noted its definition as "agent, delegate, substitute, successor, or heir"[29] and "agent for another esp. through delegated authority,"[30] and cited its use in a different statute as meaning "an agent with authority to bind others."[31]

As this court decision concerns the term "representative" in the only case where Congress used it to explicitly and narrowly limit rights of access, I submit that DoD could apply no more expansive a definition in its memos. In fact, I think we should be skeptical of the policy the memos articulate, as the FOIA contains no express prohibition against an agency's release of records to another agency, let alone such agency's representatives. As the D.C. Circuit noted in 2014, the U.S. Code "is chock-full of provisions that first mention some entity and then refer to that entity's 'representatives' in order to ensure that provision applies not only to the entity itself but also to that entity acting through others."[32] Had Congress truly intended to bar federal agencies or their representatives from seeking records under FOIA, it could have said so explicitly. Rather, it seems clear that in granting access to "any person," Congress sought to open U.S. Government records as widely as possible, *to all*, not only the agencies that have custody of them and the officials whose duties directly and properly concern the information they contain. How is it anything but absurd that Congress would restrict federal employee access to information as a byproduct of its efforts to grant the widest possible public access.

However, DoD has an obvious obligation to prevent the public's FOIA requests from being displaced or delayed by the processing of requests from federal agencies when those agencies have the authority to obtain them some other way. Prohibiting agencies or their proxies from burdening FOIA programs with their requests seems a reasonable measure to encourage the agencies to use proper channels to obtain official information, so long as such a measure is enacted in line with the provisions of the Act. But such a policy could not be construed as preventing employees from exercising their own rights of access the same as any other member of the public and for the same reasons (which is to say, any reason at all). While employees might be able to seek records via official channels, they cannot be

---

[26] Definition coming from Black's Law Dictionary, 10th Edition for the iPhone and iPad. Version: 1.4. Copyright 2009, 2014 Thomson Reuters.

[27] See *All Party Parliamentary Grp. on Extraordinary Rendition v. DOD*, 754 F.3d 1047.

[28] See *All Party Parliamentary Grp. v. DOD*.

[29] *All Party v. DOD*, citing XIII Oxford English Dictionary 660 (J.A. Simpson & E.S.C. Weiner eds., 2d ed.1989).

[30] Id., citing Webster's Third New International Dictionary 1926 (Philip Babcock Gove ed. 3d. Ed. 1993).

[31] Id., citing *Loving v. I.R.S.*, 742 F.3d 1013, 1016 (D.C.Cir.2014).

[32] Id.

compelled to do so, particularly if they have no official use for the records, as that would constitute an abuse of their authority.

Further, there's no evidence that Congress intended to impose, by mere implication, stronger limits on access for those citizens who happen to be employed in the civil service than it expressly put into force against foreign governments, felons and those subject to waivers of their rights under plea agreement. So, to the extent DoD's policy is at all defensible, it would only apply to those FOIA requests made by agency "representatives" — that is, those that **(a)** are filed by federal employees on behalf of an agency, and **(b)** are of the sort of FOIA request the employees have legal authority to file.

Given DoD's preoccupation with a legal technicality to block access to records that a Stars and Stripes reporter would use for exactly the purpose Congress intended under the Act, I'm inclined to point out here that the same technicality means no agency could authorize anyone else file FOIA requests on its behalf as a "representative." Nor, for that matter, would an employee need such authority, as FOIA grants access to "any person." Thus, FOIA officials would have two possible ways to view requests from known federal employees: (1) as some kind of improper request on behalf of an agency that can neither make such requests nor authorize its employees to make such requests, or (2) as an assertion of personal rights. Option (1) is a presumption against disclosure, contrary to the letter and spirit of the law as articulated by Congress, the courts and several Executive Orders. An agency would have to be looking for a reason to deny a request to make such a determination, in other words. Option (2) is exactly the policy articulated in previous DoD regulations cited above, such as the DCAA FOIA program guidance. That's the only option fully in keeping with the letter and spirit of the FOIA.

But we might read "representative" more broadly as encompassing not just those with the authority to file a **FOIA request** for an agency party, but those authorized to file other types of information requests with **something like the force of FOIA requests**. This would avoid stripping the personal rights of low-level employees like secretaries, cafeteria workers, janitors, young enlisted personnel, or — as in the case of Stars and Stripes — newspaper delivery drivers. DoD might argue that editorial personnel would be "representatives" for the purposes of such a policy — I would argue their authority to do their duties derive from the First Amendment to the U.S. Constitution and not the agency's authority — but despite any flaws in such a position, it would at least be more tailored than the broad prohibition suggested by the poorly worded memos.

Yet even then, to be "representatives," employees must be seeking records *on behalf of* an agency and must expressly state so in any request. Under FOIA, one cannot merely be *presumed* to be making a request on behalf of someone else. The courts have held that a representative must "clearly indicate" a request is being made "on behalf of" another person. If not, that other party cannot be legally and administratively deemed a requester.[33] Indeed, a party whose name does not appear as a requester "has no right to receive either the documents … or notice of an agency decision to withhold the documents."[34] Even if given "passing reference," a person not clearly named as a requester "has not administratively asserted a right to receive [records] in the first place," and thus lacks standing to sue for release in court.[35] Mere mention of one's employer would not make it the requester, even if it ordinarily had a recognized right of access under the FOIA. There's no reason it should be different for an agency, given those organizations already lack such rights anyway.

Therefore, while DoD and HQMC may have some policy basis for denying requests from federal agencies, they only have grounds to deny an agency employee's request when the person claims to be filing *on behalf of* the U.S. Government entity itself. This makes sense, given that one can only assert rights via a third party that one actually has, and agencies have no express FOIA rights to assert. But

---

[33] See *Three Forks Ranch Corp. v. Bureau of Land Mgmt*, 358 F. Supp. 2d 1, 2 (D.D.C. 2005)
[34] See *McDonnell v. U.S.*, 4 F.3d 1227, 1236 (3d Cir. 1993)
[35] Id.

where an employee asserts his own rights — or can reasonably be presumed to be asserting his own rights — the Act provides DoD and HQMC no authority to consider his actual or alleged employment status or intentions as reasons for an adverse determination against disclosure.

### C. Did I make my request as an employee of the Stars and Stripes?

I have shown thus far that HQMC's denial rationale fails on at least the claim that Stars and Stripes employees (or other federal employees) do not qualify to use the FOIA. It also fails on the claim that I made the request as an employee of the Stars and Stripes or the federal government.

Though employment at a DoD entity alone is not sufficient to deprive a person of FOIA rights, it nonetheless merits examination insofar as it is an element of HQMC's rationale. Perhaps HQMC believed it was enforcing a legitimate DoD policy, so it's worth considering whether there was a basis to conclude I met the minimum standard of being an employee, even if not a representative.

Even acting in good faith, however, does not excuse HQMC. As the 11th Circuit observed, "a 'good-faith' catch-all has no basis in the statute and would undermine FOIA's system of narrow and specifically identified exemptions."[36] For my employment status to have any bearing, therefore, HQMC would at a minimum have had to find that (a) I sought records on behalf of an agency, (b) I clearly indicated as much, and (c) there were no grounds to even presume I simultaneously or separately asserted my own rights. So I shall also look at whether it could have reached such a determination.

There are three factors relevant to both questions: **(i)** whether I asserted a private right; **(ii)** whether I was fulfilling a federal function; and **(iii)** whether I claimed an affiliation with Stars and Stripes or the federal government.

**(i) Assertion of private rights.** In my initial request, I asked that records be provided to me "as a U.S. citizen, private party and representative of the news media," using first-person pronouns throughout and a number of other facts that pertain to me, personally. That is, I asserted a personal right of access.

It's entirely possible HQMC would have known of the work I have done for Stars and Stripes, as it's easily found online. In my request, I cited a Twitter account I own, which listed a Stars and Stripes email address and linked to a body of my work at the newspaper's website. None of this, however, establishes my status as an employee — as opposed to a contractor, for example. It's also doubtful FOIA administrators had knowledge of the latest personnel actions or plans within Stars and Stripes, which at the time of my request was facing imminent closure. And it's certain they had no knowledge of my personal employment plans or freelance proposals.

Beyond incidental knowledge or belief about my federal employment or mere suspicion of my motives coloring its determination, it's unclear what gave HQMC grounds for concluding I was employed by Stars and Stripes at the time of my request, let alone seeking records in any official capacity as an employee. Denial of a citizen's rights would seem to require something more than speculation. Rather, any presumption should cut the other way, favoring maximal disclosure, by considering my request an assertion of *personal* FOIA rights. As President Obama said in 2009, the clear operative policy for administration of the Act is: "In the face of doubt, openness prevails."

But there should have been no doubt that I was acting on my own behalf, given the clear language of my certified FOIA request. That should have sufficed to show I was not acting as the newspaper's employee, let alone its representative. I expressly argued in some detail, with reference to my own academic and professional history, that I personally qualified as a news-media requester, regardless of any affiliation or lack of connection with any other news-media entities.

---

[36] *Sikes v. U.S. Dep't of the Navy*, 896 F.3d 1227.

As an award-winning journalist[37] with nearly a decade of experience, I have a legitimate personal interest in gathering and distributing news, regardless of where I have been, am now or may one day be employed. As the D.C. District has said, "private interests clearly drive journalists … in their search for news," which interests they advance "almost exclusively by dissemination of news," such that with any private benefit rises the public benefit.[38] Given that journalists' works generally carry their names (bylines), at least some part of that private benefit is reputational, so that I personally stand to gain as a journalist by accessing and disseminating under my name certain records that significantly contribute to public understanding of government activity.

I have a track record of publication in major news outlets such as The Associated Press,[39] Los Angeles Times[40] and NBC News,[41] and directly to an online audience of over 13,000 subscribers to my social media channels. Furthermore, I have fairly plentiful options for publishing work based on such records, given my track record and relationships with editors at outlets such as the New York Times, Military Times, Military.com and Task & Purpose, evidence of which I can provide if needed, though it may be possible to independently ascertain it from my social media activity. And, as I told HQMC in my initial request, I could also choose to publish directly to a segment of the public on my personal social media accounts, where I frequently share news, information and editorial comment that I gather, edit and publish in my spare time. In 2020, as a journalist with years of training and experience, those are but a small sampling of places I might publish.

All of that is to say that I have a more than adequate personal motive to seek out records under FOIA and to use them to public benefit in any number of ways I may choose. It is, after all, public data, and I am not bound by obligation to use the records on behalf of any federal agency. And, as the DoD has made no secret of its intentions to close Stars and Stripes at some point in the near future, perhaps even before I receive these records from HQMC, it makes little sense that I would seek them on its behalf. As a matter of fact, at the time I made my initial request, the newspaper was expected to cease publication within less than two months. I didn't even get a simple denial letter within that time frame.

**(ii) No federal function.** On top of the fact that I asserted personal rights and have obvious private interests here, in order to be considered an "employee" under the statutory definition I had to have been performing a federal function, subject to the supervision of another federal official. I cannot have been an employee then under those terms. As stated above, I made the requests on my personal time, using my personal resources, citing my personal contact information, without reference to my official title or to any federal employment. I acted on my own initiative, without the knowledge or authority of any other person or entity. I expressly stated that I was acting in a private capacity.

Aside from the DoD memos, there's no provision of any currently published regulation, issuance, or DoD FOIA handbook that prohibits a federal employee from seeking records under the Act in an official capacity, nor any official guidance pertaining to their assertion of FOIA rights in a private or personal capacity. However, the websites for the FOIA offices of several DoD components and other federal agencies advise federal civilian and military personnel not to use government resources or duty

---

[37] News21 Awards, 2013 Eppy Award and SABEW Best in Business award for "Back Home" project (https://news21.com/awards/).

[38] *Badhwar v. United States Dept. of Air Force*, 615 F. Supp. 698 (D.D.C. 1985).

[39] For example, "US panel to study Agent Orange residue exposure" by Chad Garland, May 14, 2014 (https://apnews.com/article/ed4b3ac56bad463885708a78243aa6ad).

[40] Staff profile at the Los Angeles Times, where I wrote for the community news section the Burbank Leader from 2014 to early 2016 (https://www.latimes.com/tn-bio-chad-garland-staff.html).

[41] "'Scoundrels … thieves … rip-off artists' flock to veterans charities" by Chad Garland and Andrew Knochel, Aug. 29, 2013 (https://www.nbcnews.com/news/world/scoundrels-thieves-rip-artists-flock-veterans-charities-flna8C11055138).

time when submitting FOIA requests (which, by the way, is further evidence that they have a right to seek records under the Act).[42]

HQMC's FOIA web page does not carry a similar warning, but one may wonder why, if federal employees were barred from seeking records under the Act, the page advises those filing a request not to select CAC certificates when prompted if they're using a U.S. Government computer.[43] CAC certificates are loaded onto the official government ID smart cards that DoD personnel use to access DoD computers and network resources. This would seem to suggest not only that HQMC expects federal employees to file FOIA requests, but that it expects them to do so from U.S. Government computers and logged in with CAC smart cards. That it does not advise them not to do so, but instead *how* to do so, suggests there is no prohibition on federal employees filing FOIA requests on duty or using federal resources. Employees who would do so are far closer to being *representatives* acting in an official capacity, than I was when using my personal computer, off-duty time, internet account, email addresses, etc.

In any case, I made every reasonable effort to comply with all of the above online guidance while acting in a personal capacity, though it's not clear any of that guidance constitutes published rules in the meaning given under FOIA.

Of course, as discussed, merely being a federal employee would not have been sufficient reason for denying my FOIA request. If I had, for example, used a government computer but not asserted that I was a federal agency representative, the HQMC FOIA administrators would have had no authority to adjudicate questions about potential misuse of government resources, nor would such misconduct have been a valid reason to deny my request under any provision of FOIA law or policy that I can find.

However, some indication that I had used federal duty time, resources, official titles or addresses might support a conclusion or invite an inference that I acted on behalf of a federal agency. But there was none of that. And still, as discussed, as a general rule a representative must clearly indicate they are filing a request on behalf of another party for that party to be considered the requester. Again, mere presumption on this point is not sufficient to deny a person records sought under the Act.

 **(iii) No claim of affiliation with Stars and Stripes.** Again, as I've established, I made no claim to represent any other party and did not even mention Stars and Stripes, even in passing reference. Stars and Stripes had no part in my requests; were it somehow to my advantage now to claim otherwise, I could not retroactively *make it* party to an action on this matter, let alone establish it as the principal requester. Neither, I submit, can HQMC.

However, given that I claimed to be "a representative of the news media" while requesting a fee reduction, I will briefly entertain the notion that FOIA administrators perceived that as a claim to represent a specific newspaper.

Such a conclusion is baseless. To reach this determination, first of all, HQMC would have had to ignore — or overcome with more than conclusory statements — my explicit claims to the contrary. It

---

[42] See U.S. Air Force Compliance Division FOIA Handbook (https://www.compliance.af.mil/Library/Handbook/); U.S. Naval Air Systems Command FOIA Request Q's & A's (https://www.navair.navy.mil/foia/faq); the FOIA frequently asked questions page for USCYBERCOM (https://www.cybercom.mil/FOIA/FOIA-FAQ/), echoed by USINDOPACOM and USSTRATCOM as well; and USAREUR (https://www.eur.army.mil/FOIA/); see also USDA FOIA FAQ (https://www.usda.gov/oascr/foia-frequently-asked-questions#file_request), stating that "Federal employees may not use government time or equipment when requesting information under the FOIA"; and U.S. Census Bureau FOIA presentation slides of March 2015 by Michael Toland, Ph.D. Census Bureau FOIA/Privacy Act Officer Chief, Freedom of Information Act and Open Government Branch (https://www2.census.gov/foia/events/2015-03/2015-03_Toland.pdf), stating at p. 31 that "[f]ederal employees can submit FOIA requests, but only as a private citizen," meaning they cannot do so during normal duty hours, using government equipment, or in his/her official capacity.
[43] See the HQMC FOIA web page (https://www.hqmc.marines.mil/Agencies/USMC-FOIA/).

would've also had to ignore my recitation of my personal bona fides. I was clear, in other words, that I was both acting in a personal capacity and requesting that my status be judged on the basis of my own merits as a journalist because I expressly stated as much.

What's more, asserting one is "a representative of the news media" is not an inherent claim of an agency relationship with any other party, especially an unnamed one. It is, in fact, much closer to the opposite. Determination of news-media status is to be made on the basis of the overall activities of the *requester* — that is, it pertains to the qualifications of the entity seeking the records, not its representative. The courts have found that the journalism qualifications of any agent or counsel who files a request on another's behalf, no matter how legitimate, could not justify granting news-media status to the principal.[44] Thus, "representative" here describes the news-media *requester*. So, an attorney seeking records on behalf of a journalist, for example, would be a *representative of a* "representative of the news media."

It is further clear from the legislative history and regulatory context that the term refers not to an agent acting on behalf of another party, but to a member of a class or category of requesters — the "news media" — roughly equivalent to *the press*. Congress interprets it as an equivalent to "journalist."[45] Under 32 C.F.R. § 286, DoD's FOIA program uses "member of the news media" and "news media requester" as synonyms. Therefore, we should conclude that "representative" here takes the common and traditional meaning of "typical or characteristic example" or "a typical example of a group, class, or quality," i.e., "specimen."[46]

While at one time DoD defined "representative of the news media" as "a person actively gathering news for an entity organized and operated to publish or broadcast news to the public,"[47] that definition was obviated when Congress passed the OPEN Government Act of 2007 and gave the term its own statutory definition. The current definition no longer requires either that the requester be "actively gathering news" or that he be doing so "for an entity organized and operated" to disseminate news. Hopefully HQMC is not basing its administration of the Act on this dated definition. Some 13 years ago, Congress incorporated the broader definition with the express purpose of including those who exercise First Amendment-protected freedoms as part of alternative media operations on the internet, such as "bloggers."[48]

Furthermore, news-media status pertains to procedural preferences, such as fee waivers, but is not to be used as a basis for determining the merits of the request itself. HQMC had the authority to consider my bona fides and overall activities, and to grant or deny me that status. To the extent it knew, suspected or believed I was or had been employed by Stars and Stripes, it could have considered whether that further supported my news-media status, under a common sense understanding, as Congress intended with the 2007 act.[49] It could not, however, have used that information to deny access.

That I sought the records for news gathering, moreover, in no way means my request was anything less than an assertion of my private FOIA rights — rights Congress has recognized as integral to the civil liberties of speech and press guaranteed under the First Amendment. In introducing a predecessor to the FOIA, Sen. Edward V. Long quoted James Madison, who was the chair of the

---

[44] See *Dale v. IRS*, 238 F. Supp. 2d 99, 107 (D.D.C. 2002), finding that "A party's counsel is not the 'requester' for purposes of a fee waiver."

[45] See *153 CONG. REC. 22,945 (2007)*, statement of Sen. Jon Kyl.

[46] See "Representative," at entry 1, meaning 3, and entry 2, meaning 2, in *Merriam-Webster.com Dictionary*, Merriam-Webster. Accessed 11 January 2021.

[47] See 32 C.F.R. § 286.28(e)(7)(i), dated July 1, 1999.

[48] See 153 CONG. REC. 22,945 (2007), statement of Sen. Jon Kyl.

[49] Id., in which Sen. Kyl advocates for broadening the definition without constraining it beyond "commonsense limits on who can claim to be a journalist."

committee that drafted the First Amendment. Long also noted this in the Senate report on the original FOIA bill.[50] Congress, moreover, acknowledged that the broad outlines of the FOIA were laid out by Dr. Harold L. Cross of the American Society of Newspaper Editors in the book "The People's Right To Know." It quotes Dr. Cross's foundational "conviction that inherent in the right to speak and the right to print was the right to know."[51] And, as the D.C. District has observed, Congress expressed a special preference in the legislation for journalists, the Americans who most frequently exercise the freedom of the press.[52]

It would be strange, indeed, if a private citizen were barred his rights under FOIA because he cited a history of exercising his civil liberties.

### D. Did HQMC have no alternative but to close my request and take no further action?

It should probably go without saying that if HQMC was wrong about the rights of federal employees under FOIA, and about whether I filed my request as a federal employee, then it clearly had other options than to close my request and take no further action.

In fact, since I was acting in a private capacity and neither as an employee or representative of a federal agency, HQMC had ***no alternative*** but to process my request and release any responsive records to me as the statute requires. There were also several alternatives denied to HQMC that it nonetheless appears to have exercised: it had no option to consider my identity, my employment, or my intended use of the requested records as a basis for withholding them. It therefore did so improperly.

It's also worth noting that HQMC's claim here to have no alternative but to close a request from a federal employee suggests its FOIA officials believe they have an obligation under FOIA and DoD policy so definitive as to require that they screen requesters to identify federal employees and then disregard their explicit assertion of private rights.

This is troubling, as it suggests HQMC would deny FOIA rights of over 2.5 million Americans without clearly delineated statutory authority to do so.

### Conclusion

Whatever rights Stars and Stripes and its agents and representatives may or may not have under FOIA, federal employees have rights as private citizens to seek public records under the Act and to do whatever they please with the information they obtain once it is in the public domain. The language of my request and my use of personal resources make clear that I was acting on my own behalf, regardless of whether I am or was a federal employee at the Stars and Stripes or any other agency.

It's unclear what informed HQMC's determination in this matter, but in that it allowed incidental knowledge of any affiliation I might have had with Stars and Stripes to color its decisions, it withheld the records on the basis of a flawed and prejudicial analysis. It improperly considered my identity and actual or alleged circumstances, under presumptions counter to the FOIA's inherent bias toward disclosure.

The sole element of HQMC's denial rationale that has a clear foundation in law or regulation is the policy against Stars and Stripes or other federal agencies from using FOIA to obtain official information. But, even if HQMC had established my employment status with a federal agency, there is

---

[50] See S. Rep. No. 813, 89th Congress, 1st Session, Senate Committee on the Judiciary (Oct. 4, 1965) (S. 1160), at p. 37.

[51] See H. Rep. No. 1497, 89th Congress, 2nd Session, House Committee on Government Operations (May 9, 1966) (S. 1160), at p. 23.

[52] See *Badhwar v. United States Dept. of Air Force*, 615 F. Supp. 698 (D.D.C. 1985), in which the court finds the FOIA "indicates special solicitude for journalists, along with scholars and public interest groups."

neither "clearly delineated statutory language," nor any DoD rule or regulation denying the FOIA rights of agency employees.

In light of these circumstances, I respectfully ask that this request be remanded to HQMC for processing on its merits as a proper FOIA request. I also reiterate my request for a waiver of any fees on the basis of my status as a member of the news media and the public interest served by disclosure to me.

Thank you for your prompt consideration of this appeal.


Respectfully,



Chad Garland
(c) 443-745-3240 || chadgarland@msn.com



Encl.: HQMC final disposition letter (1), original FOIA request (2 & 3), DoD FOIA director memo of 13 April 2018 (4).

Salzstr. 4
67657 Kaiserslautern
GERMANY

February 25, 2021

Judge Advocate General (Code 14)
1322 Patterson Avenue SE, Suite 3000
Washington Navy Yard DC 20374-5066

Hi there,

This is an appeal under the Freedom of Information Act of the U.S. Marine Corps' 22 December 2020 denial of my FOIA request, identified by the file number **DON-USMC-2021-001819** (Enclosure 1).

My request sought "Records of investigation completed during the period 1 January 2019 to 13 May 2020 and involving allegations against Marine Corps Brig. Gen. Austin E. Renforth for sexual assault or harassment while serving in Iraq." (Enclosure 2).

In response to this request and three others, Michael L. Peters of Headquarters Marine Corps FOIA/PA programs wrote that officials had no choice but to close these requests and take no further action because "you are an employee of the Stars and Stripes." Mr. Peters cites the statutory definition of "any person," stating that federal agencies excluded from that definition, including entities within the Department of Defense, may not file FOIA requests. He does not cite the evidence upon which HQMC determined I was a Stars and Stripes employee or that I had made the request in that capacity.

HQMC appears to disregard my personal rights. I stated that I was acting on my own personal behalf, and I submitted the request using private resources and unpaid off-duty time, on my own initiative and for my own purposes.

I find it necessary to appeal this adverse determination on the grounds that HQMC improperly withheld the requested records. I will provide the factual background to this request before proceeding to explain why I believe HQMC's denial was improperly based on factors that are both immaterial under FOIA in general and specifically irrelevant to this case.

**Factual and Procedural Background**

I alone had prior knowledge of my intent to seek these records via FOIA, and I neither sought nor obtained permission, direction, consent or approval to do so.

In all email correspondence on this matter, I have used chadgarland@msn.com, which I have owned for about 20 years. In all email and other electronic correspondence, I have used a personal computer and commercial internet services I paid for out-of-pocket at my personal residence during my personal (off-duty) time.

I submitted the initial request at 18:47 local time on 8 December 2020, asking that copies of the records be provided "to me" and stating my personal willingness to pay fees. The address block listed my residential address; the signature block listed my name alone, personal email address and personal cell phone number. I cited no employer, official position title, official address or official duty location. I wrote in the first person throughout, repeatedly using personal pronouns "I" and "me," and made no claim to represent any other person or entity.

To establish my news-media status, I cited my personal qualifications as meeting the definition under 5 U.S.C. § 552(a)(4)(A)(ii) for the term "representative of the news media."

1

After certifying the request was made "on my own personal behalf, using my own time and personal email address, from my personal residence," and that it was true to the best of my knowledge and belief, I asked that all subsequent correspondence be directed to me, at my personal email address. I signed the request with my own name alone. I made no claim to be in an official capacity or to be acting on behalf of Stars and Stripes in any capacity.

On 9 December 2020, at 18:42 my local time, I received a response telling me to submit the request via foiaonline.gov. I re-filed a practically identical request via that website portal the very same day, via personal computer, commercial internet, etc., as discussed above.

In HQMC's 22 December 2020 final disposition letter on this and three other cases, Mr. Peters stated that Stars and Stripes "and its employees do not qualify as requesters under the FOIA," and that "[s]ince you are an employee of the Stars and Stripes, we unfortunately have no alternative but to close these requests and take no further action."

At 22:51 local time that day, I asked HQMC for further information about this determination. I also asked that officials reconsider the administrative closure, allowing until the end of the day 23 December 2020 for a response. I have heard none.

I am filing separate appeals on the other three cases HQMC referenced in the 22 December 2020 disposition letter on similar grounds as those I will describe below, but I have yet to receive decisions on any of those cases. However, in response to an appeal identified by the tracking number 20-AC-0057-A1, which I filed on similar grounds in regards to a similar adverse determination last year, the Defense Privacy, Civil Liberties, and Transparency Division, Directorate for Oversight and Compliance, Office of the Chief Management Officer, decided in my favor on 24 September 2020.

**HQMC improperly withheld the requested records**

I might save you a lot of reading in this section by summing up my point thus: The HQMC FOIA office's denial is improper because it turns on *who I am*. As the 11th Circuit observed in *Sikes v. Navy* a few years ago, "the Supreme Court has made clear that 'the identity of the requesting party has *no bearing* on the merits of his or her FOIA request.'"[1]

At issue is whether HQMC exercised its proper authority when it administratively closed my request on the basis of my actual or alleged federal employment. I submit that it did not, as it had no authority to consider my employment in making its decision, and as I made this request not as a federal employee but in a private or personal capacity, in compliance with all published rules and procedures.

The FOIA establishes the right of "any person," enforceable in court, to access government records subject to the Act. The courts have repeatedly found that the legislation's purpose is "to establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language,"[2] and that the only significant limits on the exercise of FOIA rights are the nine exemptions.[3] Upon *any* request, an agency's duty to provide the records promptly to "any person" is conditioned on whether the request (1) is made in accordance with published rules stating the time, place, fees and procedures to be followed, and (2) reasonably describes the records sought.[4] Except

---

[1] See *Sikes v. Navy*, 896 F.3d 1227, 1234 (11th Cir. 2018), quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press* , 489 U.S. 749, 771, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) (emphasis in the original).

[2] See *Federal Open Market Comm. v. Merrill*, 443 U.S. 340 (1979), at 351, citing S. Rep. No. 1219, 88th Congress, 2nd Session (S. 1666).

[3] See *Military Audit Project v. Casey*, 656 F.2d 724 n.11 (D.C. Cir. 1981).

[4] See *Department of Justice Guide to the Freedom of Information Act* at pp. 23-24.

where specified, the Act "does not authorize the withholding of information or limit the availability of records to the public."[5]

There is no *clearly delineated statutory language* denying federal employees their personhood or FOIA rights. Moreover, there appears to be no clear published rule currently in force regarding the time, place, fees or procedures specifically for federal employees as pertains to FOIA requests. Indeed, HQMC cites no failure on my part to reasonably describe the records sought, no exemption or exception allowing it to withhold those records, nor any published procedural requirement that I failed to follow.

The crux of the government's denial is the statutory definition of "person," which excludes any "agency" of the U.S. Government. HQMC states conclusively that this disqualifies employees of DoD entities from seeking records under the Act. It provides the following rationale: "The Stars and Stripes Newspaper is an organization within the Department of Defense (DoD). As such, it and its employees do not qualify as requesters under the FOIA. … Since you are an employee of the Stars and Stripes, we unfortunately have no alternative but to close these requests and take no further action."

In order for this determination to be right and proper, four elements must be true: **(A)** that the Stars and Stripes Newspaper is an organization within the DoD that does not qualify to request records under the FOIA; **(B)** that its employees do not qualify as requesters under the FOIA; **(C)** that I made my request as its employee; and **(D)** that, because of (B) and (C), HQMC had no alternative course of action.

### A. Is the Stars and Stripes Newspaper an organization within the DoD that does not qualify as a requester under the FOIA?

The first element is well supported by federal laws and regulations, as 32 C.F.R. § 246 establishes Stars and Stripes as a joint-service nonappropriated fund instrumentality within the DoD, which does not fall under the definition of "person" as defined in 5 U.S.C. § 551(2). I concur with HQMC that this does not qualify the Stars and Stripes organization to invoke FOIA, but I dispute the logic as to how. The Act itself does not contemplate restrictions on U.S. Government access, it only establishes the rights of persons.[6] What excludes federal agencies like Stars and Stripes are rules DoD establishes to that effect under authority granted under the Act, which enshrines no rights or privileges to the contrary.

DoD Manual 5400.07 states that FOIA "may not be used by federal agencies seeking official information."[7] The manual further defines "FOIA requester" as specifically excluding agencies within the Executive Branch of the U.S. Government. Additionally, the version of 32 C.F.R. § 286 in effect up to at least 2016 stated that the "provisions of the FOIA are reserved for persons … as opposed to U.S. Federal Agencies."[8] Likewise, a Department of the Navy FOIA program regulation that was in force prior to around July 2018 stated that "[n]either Federal agencies nor fugitives from justice may use the FOIA to access agency records."[9] Though these particular regulations have been removed, there have been no changes to the law that would contravene those particular statements.

DoDM 5400.07 incorporates as the definition of "federal agency," by reference, the same definition Congress uses for "agency" within the FOIA, taken from 5 U.S.C. § 551(1), which includes executive and military departments.[10] Thus, the above DoD policy grants HQMC authority to dismiss requests from Executive Branch entities such as Stars and Stripes.

---

[5] See 5 U.S.C. § 552(d).

[6] See *Federal Bureau of Investigation v. Abramson,* 456 U.S. 615, 631 n.14 (1982), where the court observes that "FOIA is legislation directed at securing public access to information, not an Act intended to interdict the flow of information among Government agencies."

[7] See DoDM 5400.07 of January 25, 2017, section 6, para. 6.1.a.

[8] See 32 C.F.R. § 286.22(b) and DoD 5400.07-R of September 1998, at paragraph C5.1.2.

[9] See 32 C.F.R. § 701.3(c).

[10] See 5 U.S.C. § 552(f)(1).

**B. Do Stars and Stripes employees qualify as requesters under the FOIA?**

We cannot conclude that the above means individual federal employees lack FOIA rights. In fact, because **(i)** employees are persons, and **(ii)** HQMC lacks the authority to even consider federal employment as a factor affecting a requester's rights, federal employees have the same rights as "any person"; but, **(iii)** this question warrants special analysis of DoD policies regarding Stars and Stripes.

**(i) Employees are persons.** As used throughout Title 5, "employee" is defined as "an officer and individual" who meets three clear criteria: he or she must be (a) appointed in the civil service by a duly authorized official; (b) engaged in the performance of a Federal function under authority of law or an Executive act; and (c) subject to the supervision of an individual listed as one of the duly authorized officials under criterion (a) while performing the duties of his position.[11]

Because Congress incorporates into FOIA the definition of "agency" from 5 U.S.C. § 551(1) cited above, the courts also rely in that context on the definition of "person" from 5 U.S.C. § 551(2) — which HQMC cites in its denial letter — that is: "an individual, partnership, corporation, association, or public or private organization other than an agency."[12] DoDM 5400.07 incorporates this same definition by reference.

The term "individual," as used in any Act of Congress, or in any ruling, regulation, or interpretation of a U.S. Government entity, has the same meaning as "person," "human being," and "child," in that they are all terms defined in 1 U.S.C. § 8 to include all infant members of the species homo sapiens who are born alive at any stage of development. All federal employees were born alive at some stage of development.

Thus, throughout 5 U.S.C. (including FOIA), an "employee" is an individual, which is a person, which is not an agency. As the FOIA establishes the right of "any person" to access public records, it follows that agency employees have rights to request information under the Act as persons. There are, in fact, only three narrowly tailored exceptions to the legislation's broad "any person" standard, none of which is predicated on a requester's employment with the U.S. Government.[13] Indeed, the Department of Justice has determined that even in an official capacity a federal employee would be considered a "person" under the terms of the Act, even if the agency employing them would not be.[14]

There is a precedent for distinguishing between an individual's access rights and those of the U.S. Government institution in which they serve. In particular, requests made by members of Congress, *even "clearly acting in a completely official capacity*," are to be treated the same as those from "any person." Only "duly authorized" requests from the legislative body itself, such as those submitted through committee chairs, fall under the provisions of 5 U.S.C. § 552(d).[15] Thus, even where Congress may have greater right of access than that afforded by FOIA, its members individually have no less a right than other persons under the Act.

---

[11] See 5 U.S.C § 2105(a).

[12] See 5 U.S.C. § 551(2).

[13] See *Department of Justice Guide to the Freedom of Information Act* at pp. 19-21, which describes the narrow exceptions to the "any person" definition as fugitives from justice seeking records pertaining to their fugitive status, foreign governments or international government organizations and their representatives seeking records from agencies of the intelligence community, and persons who have waived FOIA rights under a plea agreement.

[14] See *FOIA Update*, Vol. VI, No. 1, dated January 1, 1985, which states that "a FOIA request received from an employee of another federal agency, even one acting in his official capacity, would be a request from a 'person' and would therefore satisfy ... the technical requirement of the FOIA ..."

[15] See *FOIA Update*, Vol. V, No. 1, dated January 1, 1984, which states that "when an agency receives a FOIA request from a Member of Congress, it should first determine whether it is a duly authorized request on behalf of Congress through a legislative committee or subcommittee" and that "if the request is not an official committee or subcommittee request, then the agency should process it as a request from 'any person.'"

If, as the Justice Department has said, a federal employee meets the technical definition of "person" and may assert FOIA rights in his official capacity — indeed, nothing in DoD Directive 5400.7, DoD Manual 5400.07, 32 C.F.R § 286 or the DoD FOIA Handbook explicitly states they could not — it would be all the more true that they may assert such rights when off-duty or in a personal capacity. An individual would not meet two of the three criteria of "employee" under Title 5 when not performing a federal function subject to supervision of another employee. Published rules for the DoD and DoN FOIA programs show support for such a reading of the law, at least until the DoD FOIA program regulation in 32 C.F.R. was overhauled to incorporate provisions of the OPEN Government Act of 2007 and the FOIA Improvement Act of 2016, neither of which changed the underlying basis for such a conclusion.

Up until 2018, DoN's FOIA regulation stated that "[w]hile authority may exist to disclose records to individuals in their official capacity, the provisions of the instruction in this part apply if the same individual seeks the records in a private or personal capacity."[16] Prior to 2017, 32 C.F.R. § 286 included a similar statement.[17]

As the FOIA is concerned with establishing a public right of access, broadly conceived, it follows that such rights would extend to those Americans employed by the U.S. Government, the largest single employer in the United States. It makes little sense that records would be made available to the general American public *and foreign nationals*, to include even America's enemies, but not to the millions of citizens and nationals in the civil service who have sworn allegiance to the country.

**(ii) HQMC lacks authority to consider employment as a factor.** What's more, neither the FOIA nor any DoD regulation allows the government to distinguish between requesters by employment or duty status.

First, requesters are not required to disclose details of their employment or duty status, why they are seeking the records, or what they plan to do with them. But even if that information were known to FOIA administrators, *it is immaterial*, as the Supreme Court has repeatedly held such factors cannot be used as grounds to withhold (or disclose) records. A person's particular reasons for seeking access have no bearing on their rights of access, as the Supreme Court held in *NARA v. Favish*:

> [A]s a general rule, when documents are within FOIA's disclosure provisions, citizens should not be required to explain why they seek the information. A person requesting the information needs no preconceived idea of the uses the data might serve. The information belongs to citizens to do with as they choose. Furthermore, as we have noted, the disclosure does not depend on the identity of the requester. As a general rule, if the information is subject to disclosure, it belongs to all.[18]

Further, the courts have found that an inquiry into the identity of the requester and the circumstances of their request would constitute a weighing of "the benefits and evils of disclosure" on a basis Congress did not invite.[19] The FOIA "was not intended to be applied on such an individualized basis," the 2nd Circuit held, as Congress created a scheme of categorical exclusion through exemptions.[20]

Indeed, from those nine exemptions alone arise "[t]he only important limitations on the exercise of the rights provided by the Act," the court has held.[21] As the exemptions pertain to the request, not the requester, they are not dependent on the employment status of the person seeking access.

---

[16] See 32 C.F.R. § 701.5(f)(5).

[17] See 32 C.F.R. § 286.4(f).

[18] See *NARA v. Favish*, 541 U.S. 157, 172 (2004).

[19] See *FBI v. Abramson*, 456 U.S. 615, 631 (1982).

[20] See *United Technologies Corp. v. F.A.A*, 102 F.3d 688 (2d Cir. 1996), citing *FBI v. Abramson*.

[21] See *Military Audit Project v. Casey*, 656 F.2d 724 n.11 (D.C. Cir. 1981).

And, at least as regards Stars and Stripes reporters, published DoD regulations forbid the use of the U.S. Government status of those journalists to block the release to them of otherwise releasable information.[22]

**(iii) A special analysis of DoD policy statements.** Before closing this question, a set of DoD memos the Pentagon's top FOIA officials have sent over the past 30 years merit separate analysis, as they specifically concern requests from the Stars and Stripes or its personnel. Though Mr. Peters does not cite any of this guidance, it likely informs HQMC's presumptive denial.

I can only speak here to three memos that I have been able to review — those from 1991 and 1999, which are published online,[23] and a 2018 issuance provided to me in September (Enclosure 3). The 1999 memo suggests the existence of another similar memo from 1993, but I've never seen it.

First, I find the same flaws in the DoD guidance that I've already noted in HQMC's denial rationale, at least as far as DoD appears to conflate the notion "*'person' excludes 'agency'*" with the unfounded assertion "*'person' excludes 'federal employee.'*" (Emphasis in the below three paragraphs is mine.)

The earliest DoD memo states that, "as [the Stars and Stripes Newspaper is an organization within DoD], its personnel do not qualify as requesters under the FOIA." Citing the statutory definition of "person," this memo states that "a federal agency, **or a representative of a federal agency** may not serve a FOIA request on its own agency, or another federal agency." It directs components that receive a FOIA request "from **representatives** of the Stars and Stripes" to inform them of this definition before advising them "to seek their information through official channels, apart from the FOIA."

The 1999 correspondence directs FOIA administrators to "advise your components once again that Stars and Stripes personnel, **as representatives of a Federal Agency**, may not request information under FOIA." This memo cites no explicit legal basis, but its reference to the 1991 memo suggests reliance on the same interpretation of the law, turning on the "person" standard.

Citing a 25-year history for its policy, DoD in 2018 states that "**any representative** of the Stars and Stripes cannot use the FOIA to gain access to DoD information." Again citing the Act's "person" standard, this memo reiterates that "a federal agency, or **a representative of a federal agency**, may not submit a FOIA request to a federal agency." The memo advises FOIA officials that, upon receiving a request "from the Stars and Stripes, you should close it as 'not a proper FOIA request'" and "advise [Stars and Stripes] that they should seek the information through another [sic] outside of the FOIA."

Despite titles and contents suggesting they pertain to requests received from Stars and Stripes and to an agency's response to that organization, the policy would on its face bar *any civil or uniformed service member* from seeking records under FOIA. It would violate due process and equal protection to only enforce this policy against Stars and Stripes. Thus, if the status of Stars and Stripes as an organization within DoD is sufficient to find that "its personnel do not qualify as requesters under the FOIA," then the same must apply to all other DoD personnel.

This cannot be true. The memos are framed not as new policy, but as reminders of existing policy dating to at least 1991. But existing regulations at that time and in 1999 included the explicit provision, previously referenced at **B.(ii).** above, recognizing that, "while authority may exist to disclose records to individuals in their official capacity, the provisions of this Part apply if the same individual

---

[22] See 32 C.F.R. § 246 App. D, paragraph C.2.a.

[23] See DoD Directorate of Freedom of Information and Security Review memorandum 99-CORR-006 "FOIA requests from the Stars and Stripes" of 19 January 1999 and Office of the Secretary of Defense memo 91-CORR-126 "FOIA Requests from the Stars and Stripes newspaper" of 1 August 1991, available on the DoD Open Government FOIA Resources webpage (https://open.defense.gov/Portals/23/Documents/starstrp.pdf).

seeks the records in a private or personal capacity."[24] Moreover, Defense Contract Audit Agency, a component under DoD, stated explicitly in its FOIA program regulation at the time that "DCAA organizational elements will consider FOIA requests from [Federal agency officials, among others] as made in a private, rather than official capacity, and will make disclosure and fee determinations accordingly."[25] Notably, this is consistent with treatment of requests from Congress members.

Even the regulation governing the Stars and Stripes, effective since 1993, recognizes a distinction between requests made by the organization and those made by its personnel. It states that a "**Government organization** may not file a request for information against another Government organization," but that "it is the responsibility of all commands to honor the DoD Principles of Information, particularly regarding the intent of open access as described in [DoD's FOIA program regulation] when responding to queries from Stars and Stripes **reporters**." The emphasis here is mine. Of note, the DoD Principles of Information require that the FOIA be supported in both letter and spirit, stating that the only grounds not to release information is that such release is "precluded by national security constraints or valid statutory mandates or exceptions." There is no statutory exception pertaining to Stars and Stripes reporters.

Moreover, just as DoD regulations forbid officials from using Stars and Stripes reporters' U.S. Government status to block release of records to them, they bar the reporters themselves from using their government status or credentials "to gain special treatment ... or other advantages that are not given equally to civilian media." These two prongs would bar both elements of the DoD memos — the treatment of a reporter's request as that of a "representative of a federal agency," and the direction that they seek the records via a method available to federal agencies and not the civilian media. As the FOIA provides that records must be promptly disclosed upon "any request," regardless of whether it explicitly invokes the Act, the DoD memo's direction that Stars and Stripes seek the records via "official channels, apart from the FOIA" or "outside of the FOIA" must be referring to an assertion of official government privilege or authority not available to those outside of the U.S. Government.

Given that DoD regulations were implemented according to a rule-making process, published in the Federal Register and subject to public comment, and given that the memos were not — and are not meant to override regulations — the 30-year DoD policy must be meant to comport with the overall rule that federal employees *may seek records under FOIA "in a personal or private capacity."* We can also reasonably conclude that DoD would not have sought to impose via memo a policy limiting access by "any person" further than is specifically authorized by Congress, which could draw a legal challenge from persons whose rights were limited. Thus, employees have private rights. For these memos to have any meaning that isn't violative of those rights, they must pertain to submissions that do not assert personal rights.

In fact, I submit the formulation "representative(s) of a federal agency" used in several of the memos, as opposed to simply "employee" or "personnel," must be a significant phrase, particularly as it's used in the two memos that expressly describing the legal foundation for the policy. Both the 1991 and 2018 memos also refer to "representatives" or "any representative" of Stars and Stripes. As I will show, *representative* is not synonymous with *employee* under the Act. Had DoD intended to bar mere employees from seeking records, it could have simply omitted such phrasing. We must, therefore, examine its particular meaning.

There is no definition of "representative of a federal agency" given under FOIA. As already discussed, DoD gives "federal agency" the same meaning under its FOIA program as Congress gives "agency," so our understanding of the entire phrase hinges on the meaning of "representative." In its common and traditional sense, it could refer to a member of a legislature or to "someone who stands for

---

[24] See 32 C.F.R. § 286.4(f).
[25] See 32 C.F.R. § 290.7(e)(4).

or acts on behalf of another," i.e. an *agent*.[26] In the FOIA context specifically, the term is used in four ways: [1] "a representative of a government entity" other than a State, territory, commonwealth, or district of the United States, or any subdivision thereof, in § 552(a)(3)(e)(ii); [2] "a representative of the news media" as defined in § 552(a)(4)(A)(ii); [3] a representative of a federal officer or employee under § 552(a)(4)(f)(i); and [4] in references to the "House of Representatives" under § 552(e) and (h).

The use closest to that of the sense in the DoD memos is the first of these, as it concerns a government entity. It is also the only use that creates an exception to the broad "any person" standard under the FOIA. Conveniently, the statutory meaning has been adjudicated, at least as it concerns those who seek records on behalf of foreign governments. Specifically, in 2014 the D.C. Circuit found that interpreting "representative" as equivalent to "official," "employee" or "affiliate" would be too vague.[27] The court found more narrowly that those who have the authority to file FOIA requests on behalf of a government entity are "representatives" of such entities when they submit requests "of the sort they have authority to file."[28] Notably, this definition would also apply to non-employees, such as elected legislators. The court arrived at its decision after reviewing the term's common and traditional meaning as referring to an agency relationship, whereby one party is subject to the control of and acting in accordance with instructions of a principal party. In support of its decisions, the court noted its definition as "agent, delegate, substitute, successor, or heir"[29] and "agent for another esp. through delegated authority,"[30] and cited its use in a different statute as meaning "an agent with authority to bind others."[31]

As this court decision concerns the term "representative" in the only case where Congress used it to explicitly and narrowly limit rights of access, I submit that DoD could apply no more expansive a definition in its memos. In fact, I think we should be skeptical of the policy the memos articulate, as the FOIA contains no express prohibition against an agency's release of records to another agency, let alone such agency's representatives. As the D.C. Circuit noted in 2014, the U.S. Code "is chock-full of provisions that first mention some entity and then refer to that entity's 'representatives' in order to ensure that provision applies not only to the entity itself but also to that entity acting through others."[32] Had Congress truly intended to bar federal agencies or their representatives from seeking records under FOIA, it could have said so explicitly. Rather, it seems clear that in granting access to "any person," Congress sought to open U.S. Government records as widely as possible, *to all*, not only the agencies that have custody of them and the officials whose duties directly and properly concern the information they contain. How is it anything but absurd that Congress would restrict federal employee access to information as a byproduct of its efforts to grant the widest possible public access?

However, DoD has an obvious obligation to prevent the public's FOIA requests from being displaced or delayed by the processing of requests from federal agencies when those agencies have the authority to obtain them some other way. Prohibiting agencies or their proxies from burdening FOIA programs with their requests seems a reasonable measure to encourage the agencies to use proper channels to obtain official information, so long as such a measure is enacted in line with the provisions of the Act. But such a policy could not be construed as preventing employees from exercising their own rights of access the same as any other member of the public and for the same reasons (which is to say, any reason at all). While employees might be able to seek records via official channels, they cannot be

---

[26] Definition coming from Black's Law Dictionary, 10th Edition for the iPhone and iPad. Version: 1.4. Copyright 2009, 2014 Thomson Reuters.

[27] See *All Party Parliamentary Grp. on Extraordinary Rendition v. DOD*, 754 F.3d 1047.

[28] See *All Party Parliamentary Grp. v. DOD*.

[29] *All Party v. DOD*, citing XIII Oxford English Dictionary 660 (J.A. Simpson & E.S.C. Weiner eds., 2d ed.1989).

[30] Id., citing Webster's Third New International Dictionary 1926 (Philip Babcock Gove ed. 3d. Ed. 1993).

[31] Id., citing *Loving v. I.R.S.*, 742 F.3d 1013, 1016 (D.C.Cir.2014).

[32] Id.

compelled to do so, particularly if they have no official use for the records, as that would constitute an abuse of their authority.

Further, there's no evidence that Congress intended to impose, by mere implication, stronger limits on access for those citizens who happen to be employed in the civil service than it expressly put into force against foreign governments, felons and those subject to waivers of their rights under plea agreement. So, to the extent DoD's policy is at all defensible, it would only apply to those FOIA requests made by agency "representatives" — that is, those that **(a)** are filed by federal employees on behalf of an agency, and **(b)** are of the sort of FOIA request the employees have legal authority to file.

Given DoD's preoccupation with a legal technicality to block access to records that a Stars and Stripes reporter would use for exactly the purpose Congress intended under the Act, I'm inclined to point out here that the same technicality means no agency could authorize anyone else file FOIA requests on its behalf as a "representative." Nor, for that matter, would an employee need such authority, as FOIA grants access to "any person." Thus, FOIA officials would have two possible ways to view requests from known federal employees: (1) as some kind of improper request on behalf of an agency that can neither make such requests nor authorize its employees to make such requests, or (2) as an assertion of personal rights. Option (1) is a presumption against disclosure, contrary to the letter and spirit of the law as articulated by Congress, the courts and several Executive Orders. An agency would have to be looking for a reason to deny a request to make such a determination, in other words. Option (2) is exactly the policy articulated in previous DoD regulations cited above, such as the DCAA FOIA program guidance. That's the only option fully in keeping with the letter and spirit of the FOIA.

But we might read "representative" more broadly as encompassing not just those with the authority to file a ***FOIA request*** for an agency party, but those authorized to file other types of information requests with ***something like the force of FOIA requests***. This would avoid stripping the personal rights of low-level employees like secretaries, cafeteria workers, janitors, young enlisted personnel, or — as in the case of Stars and Stripes — newspaper delivery drivers. DoD might argue that editorial personnel would be "representatives" for the purposes of such a policy — I would argue their authority to do their duties derive from the First Amendment to the U.S. Constitution and not the agency's authority — but despite any flaws in such a position, it would at least be more tailored than the broad prohibition suggested by the poorly worded memos.

Yet even then, to be "representatives," employees must be seeking records *on behalf of* an agency and must expressly state so in any request. Under FOIA, one cannot merely be *presumed* to be making a request on behalf of someone else. The courts have held that a representative must "clearly indicate" a request is being made "on behalf of" another person. If not, that other party cannot be legally and administratively deemed a requester.[33] Indeed, a party whose name does not appear as a requester "has no right to receive either the documents … or notice of an agency decision to withhold the documents."[34] Even if given "passing reference," a person not clearly named as a requester "has not administratively asserted a right to receive [records] in the first place," and thus lacks standing to sue for release in court.[35] Mere mention of one's employer would not make it the requester, even if it ordinarily had a recognized right of access under the FOIA. There's no reason it should be different for an agency, given those organizations already lack such rights anyway.

Therefore, while DoD and HQMC may have some policy basis for denying requests from federal agencies, they only have grounds to deny an agency employee's request when the person claims to be filing *on behalf of* the U.S. Government entity itself. This makes sense, given that one can only assert rights via a third party that one actually has, and agencies have no express FOIA rights to assert. But

---

[33] See *Three Forks Ranch Corp. v. Bureau of Land Mgmt*, 358 F. Supp. 2d 1, 2 (D.D.C. 2005)

[34] See *McDonnell v. U.S.*, 4 F.3d 1227, 1236 (3d Cir. 1993)

[35] Id.

where an employee asserts his own rights — or can reasonably be presumed to be asserting his own rights — the Act provides DoD and HQMC no authority to consider his actual or alleged employment status or intentions as reasons for an adverse determination against disclosure.

### C. Did I make my request as an employee of the Stars and Stripes?

I have shown thus far that HQMC's denial rationale fails on at least the claim that Stars and Stripes employees (or other federal employees) do not qualify to use the FOIA. It also fails on the claim that I made the request as an employee of the Stars and Stripes or the federal government.

Though employment at a DoD entity alone is not sufficient to deprive a person of FOIA rights, it nonetheless merits examination insofar as it is an element of HQMC's rationale. Perhaps HQMC believed it was enforcing a legitimate DoD policy, so it's worth considering whether there was a basis to conclude I met the minimum standard of being an employee, even if not a representative.

Even acting in good faith, however, does not excuse HQMC. As the 11th Circuit observed, "a 'good-faith' catch-all has no basis in the statute and would undermine FOIA's system of narrow and specifically identified exemptions."[36] For my employment status to have any bearing, therefore, HQMC would at a minimum have had to find that (a) I sought records on behalf of an agency, (b) I clearly indicated as much, and (c) there were no grounds to even presume I simultaneously or separately asserted my own rights. So I shall also look at whether it could have reached such a determination.

There are three factors relevant to both questions: **(i)** whether I asserted a private right; **(ii)** whether I was fulfilling a federal function; and **(iii)** whether I claimed an affiliation with Stars and Stripes or the federal government.

**(i) Assertion of private rights.** In my initial request, I asked that records be provided to me "as a U.S. citizen, private party and representative of the news media," using first-person pronouns throughout and a number of other facts that pertain to me, personally. That is, I asserted a personal right of access.

It's entirely possible HQMC would have known of the work I have done for Stars and Stripes, as it's easily found online. In my request, I cited a Twitter account I own, which listed a Stars and Stripes email address and linked to a body of my work at the newspaper's website. None of this, however, establishes my status as an employee — as opposed to a contractor, for example. It's also doubtful FOIA administrators had knowledge of the latest personnel actions or plans within Stars and Stripes, which at the time of my request was facing imminent closure. And it's certain they had no knowledge of my personal employment plans or freelance proposals.

Beyond incidental knowledge or belief about my federal employment or mere suspicion of my motives coloring its determination, it's unclear what gave HQMC grounds for concluding I was employed by Stars and Stripes at the time of my request, let alone seeking records in any official capacity as an employee. Denial of a citizen's rights would seem to require something more than speculation. Rather, any presumption should cut the other way, favoring maximal disclosure, by considering my request an assertion of *personal* FOIA rights. As President Obama said in 2009, the clear operative policy for administration of the Act is: "In the face of doubt, openness prevails."

But there should have been no doubt that I was acting on my own behalf, given the clear language of my certified FOIA request. That should have sufficed to show I was not acting as the newspaper's employee, let alone its representative. I expressly argued in some detail, with reference to my own academic and professional history, that I personally qualified as a news-media requester, regardless of any affiliation or lack of connection with any other news-media entities.

---

[36] *Sikes v. U.S. Dep't of the Navy*, 896 F.3d 1227.

As an award-winning journalist[37] with nearly a decade of experience, I have a legitimate personal interest in gathering and distributing news, regardless of where I have been, am now or may one day be employed. As the D.C. District has said, "private interests clearly drive journalists … in their search for news," which interests they advance "almost exclusively by dissemination of news," such that with any private benefit rises the public benefit.[38] Given that journalists' works generally carry their names (bylines), at least some part of that private benefit is reputational, so that I personally stand to gain as a journalist by accessing and disseminating under my name certain records that significantly contribute to public understanding of government activity.

I have a track record of publication in major news outlets such as The Associated Press,[39] Los Angeles Times[40] and NBC News,[41] and directly to an online audience of over 13,000 subscribers to my social media channels. Furthermore, I have fairly plentiful options for publishing work based on such records, given my track record and relationships with editors at outlets such as the New York Times, Military Times, Military.com and Task & Purpose, evidence of which I can provide if needed, though it may be possible to independently ascertain it from my social media activity. And, as I told HQMC in my initial request, I could also choose to publish directly to a segment of the public on my personal social media accounts, where I frequently share news, information and editorial comment that I gather, edit and publish in my spare time. In 2020, as a journalist with years of training and experience, those are but a small sampling of places I might publish.

All of that is to say that I have a more than adequate personal motive to seek out records under FOIA and to use them to public benefit in any number of ways I may choose. It is, after all, public data, and I am not bound by obligation to use the records on behalf of any federal agency. And, as the DoD has made no secret of its intentions to close Stars and Stripes at some point in the near future, perhaps even before I receive these records from HQMC, it makes little sense that I would seek them on its behalf. As a matter of fact, at the time I made my initial request, the newspaper was expected to cease publication within less than two months. I didn't even get a simple denial letter within that time frame.

**(ii) No federal function.** On top of the fact that I asserted personal rights and have obvious private interests here, in order to be considered an "employee" under the statutory definition I had to have been performing a federal function, subject to the supervision of another federal official. I cannot have been an employee then under those terms. As stated above, I made the requests on my personal time, using my personal resources, citing my personal contact information, without reference to my official title or to any federal employment. I acted on my own initiative, without the knowledge or authority of any other person or entity. I expressly stated that I was acting in a private capacity.

Aside from the DoD memos, there's no provision of any currently published regulation, issuance, or DoD FOIA handbook that prohibits a federal employee from seeking records under the Act in an official capacity, nor any official guidance pertaining to their assertion of FOIA rights in a private or personal capacity. However, the websites for the FOIA offices of several DoD components and other federal agencies advise federal civilian and military personnel not to use government resources or duty

---

[37] News21 Awards, 2013 Eppy Award and SABEW Best in Business award for "Back Home" project (https://news21.com/awards/).

[38] *Badhwar v. United States Dept. of Air Force*, 615 F. Supp. 698 (D.D.C. 1985).

[39] For example, "US panel to study Agent Orange residue exposure" by Chad Garland, May 14, 2014 (https://apnews.com/article/ed4b3ac56bad463885708a78243aa6ad).

[40] Staff profile at the Los Angeles Times, where I wrote for the community news section the Burbank Leader from 2014 to early 2016 (https://www.latimes.com/tn-bio-chad-garland-staff.html).

[41] "'Scoundrels … thieves … rip-off artists' flock to veterans charities" by Chad Garland and Andrew Knochel, Aug. 29, 2013 (https://www.nbcnews.com/news/world/scoundrels-thieves-rip-artists-flock-veterans-charities-flna8C11055138).

time when submitting FOIA requests (which, by the way, is further evidence that they have a right to seek records under the Act).[42]

HQMC's FOIA web page does not carry a similar warning, but one may wonder why, if federal employees were barred from seeking records under the Act, the page advises those filing a request not to select CAC certificates when prompted if they're using a U.S. Government computer.[43] CAC certificates are loaded onto the official government ID smart cards that DoD personnel use to access DoD computers and network resources. This would seem to suggest not only that HQMC expects federal employees to file FOIA requests, but that it expects them to do so from U.S. Government computers and logged in with CAC smart cards. That it does not advise them not to do so, but instead *how* to do so, suggests there is no prohibition on federal employees filing FOIA requests on duty or using federal resources. Employees who would do so are far closer to being *representatives* acting in an official capacity, than I was when using my personal computer, off-duty time, internet account, email addresses, etc.

In any case, I made every reasonable effort to comply with all of the above online guidance while acting in a personal capacity, though it's not clear any of that guidance constitutes published rules in the meaning given under FOIA.

Of course, as discussed, merely being a federal employee would not have been sufficient reason for denying my FOIA request. If I had, for example, used a government computer but not asserted that I was a federal agency representative, the HQMC FOIA administrators would have had no authority to adjudicate questions about potential misuse of government resources, nor would such misconduct have been a valid reason to deny my request under any provision of FOIA law or policy that I can find.

However, some indication that I had used federal duty time, resources, official titles or addresses might support a conclusion or invite an inference that I acted on behalf of a federal agency. But there was none of that. And still, as discussed, as a general rule a representative must clearly indicate they are filing a request on behalf of another party for that party to be considered the requester. Again, mere presumption on this point is not sufficient to deny a person records sought under the Act.

 **(iii) No claim of affiliation with Stars and Stripes.** Again, as I've established, I made no claim to represent any other party and did not even mention Stars and Stripes, even in passing reference. Stars and Stripes had no part in my requests; were it somehow to my advantage now to claim otherwise, I could not retroactively *make it* party to an action on this matter, let alone establish it as the principal requester. Neither, I submit, can HQMC.

However, given that I claimed to be "a representative of the news media" while requesting a fee reduction, I will briefly entertain the notion that FOIA administrators perceived that as a claim to represent a specific newspaper.

Such a conclusion is baseless. To reach this determination, first of all, HQMC would have had to ignore — or overcome with more than conclusory statements — my explicit claims to the contrary. It

---

[42] See U.S. Air Force Compliance Division FOIA Handbook (https://www.compliance.af.mil/Library/Handbook/); U.S. Naval Air Systems Command FOIA Request Q's & A's (https://www.navair.navy.mil/foia/faq); the FOIA frequently asked questions page for USCYBERCOM (https://www.cybercom.mil/FOIA/FOIA-FAQ/), echoed by USINDOPACOM and USSTRATCOM as well; and USAREUR (https://www.eur.army.mil/FOIA/); see also USDA FOIA FAQ (https://www.usda.gov/oascr/foia-frequently-asked-questions#file_request), stating that "Federal employees may not use government time or equipment when requesting information under the FOIA"; and U.S. Census Bureau FOIA presentation slides of March 2015 by Michael Toland, Ph.D. Census Bureau FOIA/Privacy Act Officer Chief, Freedom of Information Act and Open Government Branch (https://www2.census.gov/foia/events/2015-03/2015-03_Toland.pdf), stating at p. 31 that "[f]ederal employees can submit FOIA requests, but only as a private citizen," meaning they cannot do so during normal duty hours, using government equipment, or in his/her official capacity.

[43] See the HQMC FOIA web page (https://www.hqmc.marines.mil/Agencies/USMC-FOIA/).

would've also had to ignore my recitation of my personal bona fides. I was clear, in other words, that I was both acting in a personal capacity and requesting that my status be judged on the basis of my own merits as a journalist because I expressly stated as much.

What's more, asserting one is "a representative of the news media" is not an inherent claim of an agency relationship with any other party, especially an unnamed one. It is, in fact, much closer to the opposite. Determination of news-media status is to be made on the basis of the overall activities of the *requester* — that is, it pertains to the qualifications of the entity seeking the records, not its representative. The courts have found that the journalism qualifications of any agent or counsel who files a request on another's behalf, no matter how legitimate, could not justify granting news-media status to the principal.[44] Thus, "representative" here describes the news-media *requester*. So, an attorney seeking records on behalf of a journalist, for example, would be a *representative of a* "representative of the news media."

It is further clear from the legislative history and regulatory context that the term refers not to an agent acting on behalf of another party, but to a member of a class or category of requesters — the "news media" — roughly equivalent to *the press*. Congress interprets it as an equivalent to "journalist."[45] Under 32 C.F.R. § 286, DoD's FOIA program uses "member of the news media" and "news media requester" as synonyms. Therefore, we should conclude that "representative" here takes the common and traditional meaning of "typical or characteristic example" or "a typical example of a group, class, or quality," i.e., "specimen."[46]

While at one time DoD defined "representative of the news media" as "a person actively gathering news for an entity organized and operated to publish or broadcast news to the public,"[47] that definition was obviated when Congress passed the OPEN Government Act of 2007 and gave the term its own statutory definition. The current definition no longer requires either that the requester be "actively gathering news" or that he be doing so "for an entity organized and operated" to disseminate news. Hopefully HQMC is not basing its administration of the Act on this dated definition. Some 13 years ago, Congress incorporated the broader definition with the express purpose of including those who exercise First Amendment-protected freedoms as part of alternative media operations on the internet, such as "bloggers."[48]

Furthermore, news-media status pertains to procedural preferences, such as fee waivers, but is not to be used as a basis for determining the merits of the request itself. HQMC had the authority to consider my bona fides and overall activities, and to grant or deny me that status. To the extent it knew, suspected or believed I was or had been employed by Stars and Stripes, it could have considered whether that further supported my news-media status, under a common sense understanding, as Congress intended with the 2007 act.[49] It could not, however, have used that information to deny access.

That I sought the records for news gathering, moreover, in no way means my request was anything less than an assertion of my private FOIA rights — rights Congress has recognized as integral to the civil liberties of speech and press guaranteed under the First Amendment. In introducing a predecessor to the FOIA, Sen. Edward V. Long quoted James Madison, who was the chair of the

---

[44] See *Dale v. IRS*, 238 F. Supp. 2d 99, 107 (D.D.C. 2002), finding that "A party's counsel is not the 'requester' for purposes of a fee waiver."

[45] See *153 CONG. REC. 22,945 (2007)*, statement of Sen. Jon Kyl.

[46] See "Representative," at entry 1, meaning 3, and entry 2, meaning 2, in *Merriam-Webster.com Dictionary*, Merriam-Webster. Accessed 11 January 2021.

[47] See 32 C.F.R. § 286.28(e)(7)(i), dated July 1, 1999.

[48] See 153 CONG. REC. 22,945 (2007), statement of Sen. Jon Kyl.

[49] Id., in which Sen. Kyl advocates for broadening the definition without constraining it beyond "commonsense limits on who can claim to be a journalist."

committee that drafted the First Amendment. Long also noted this in the Senate report on the original FOIA bill.[50] Congress, moreover, acknowledged that the broad outlines of the FOIA were laid out by Dr. Harold L. Cross of the American Society of Newspaper Editors in the book "The People's Right To Know." It quotes Dr. Cross's foundational "conviction that inherent in the right to speak and the right to print was the right to know."[51] And, as the D.C. District has observed, Congress expressed a special preference in the legislation for journalists, the Americans who most frequently exercise the freedom of the press.[52]

It would be strange, indeed, if a private citizen were barred his rights under FOIA because he cited a history of exercising his civil liberties.

### D. Did HQMC have no alternative but to close my request and take no further action?

It should probably go without saying that if HQMC was wrong about the rights of federal employees under FOIA, and about whether I filed my request as a federal employee, then it clearly had other options than to close my request and take no further action.

In fact, since I was acting in a private capacity and neither as an employee or representative of a federal agency, HQMC had **_no alternative_** but to process my request and release any responsive records to me as the statute requires. There were also several alternatives denied to HQMC that it nonetheless appears to have exercised: it had no option to consider my identity, my employment, or my intended use of the requested records as a basis for withholding them. It therefore did so improperly.

It's also worth noting that HQMC's claim here to have no alternative but to close a request from a federal employee suggests its FOIA officials believe they have an obligation under FOIA and DoD policy so definitive as to require that they screen requesters to identify federal employees and then disregard their explicit assertion of private rights.

This is troubling, as it suggests HQMC would deny FOIA rights of over 2.5 million Americans without clearly delineated statutory authority to do so.

### Conclusion

Whatever rights Stars and Stripes and its agents and representatives may or may not have under FOIA, federal employees have rights as private citizens to seek public records under the Act and to do whatever they please with the information they obtain once it is in the public domain. The language of my request and my use of personal resources make clear that I was acting on my own behalf, regardless of whether I am or was a federal employee at the Stars and Stripes or any other agency.

It's unclear what informed HQMC's determination in this matter, but in that it allowed incidental knowledge of any affiliation I might have had with Stars and Stripes to color its decisions, it withheld the records on the basis of a flawed and prejudicial analysis. It improperly considered my identity and actual or alleged circumstances, under presumptions counter to the FOIA's inherent bias toward disclosure.

The sole element of HQMC's denial rationale that has a clear foundation in law or regulation is the policy against Stars and Stripes or other federal agencies *themselves* from using FOIA to obtain official information. But, even if HQMC had established my employment status with a federal agency,

---

[50] See S. Rep. No. 813, 89th Congress, 1st Session, Senate Committee on the Judiciary (Oct. 4, 1965) (S. 1160), at p. 37.

[51] See H. Rep. No. 1497, 89th Congress, 2nd Session, House Committee on Government Operations (May 9, 1966) (S. 1160), at p. 23.

[52] See *Badhwar v. United States Dept. of Air Force*, 615 F. Supp. 698 (D.D.C. 1985), in which the court finds the FOIA "indicates special solicitude for journalists, along with scholars and public interest groups."

there is neither "clearly delineated statutory language," nor any DoD rule or regulation denying the FOIA rights of agency employees under any circumstance.

In light of these circumstances, I respectfully ask that this request be remanded to HQMC for processing on its merits as a proper FOIA request. I also reiterate my request for a waiver of any fees on the basis of my status as a member of the news media and the public interest served by disclosure to me.

Thank you for your prompt consideration of this appeal.


Respectfully,



Chad Garland
(c) 443-745-3240 || chadgarland@msn.com



Encl.: HQMC final disposition letter (1), original FOIA request (2), DoD FOIA director memo of 13 April 2018 (3).

Exhibit 20



**DEPARTMENT OF THE NAVY**
OFFICE OF THE JUDGE ADVOCATE GENERAL
1322 PATTERSON AVENUE SE SUITE 3000
WASHINGTON NAVY YARD DC 20374

IN REPLY REFER TO:
5720
Ser 14/124
April 28, 2021

Mr. Chad Garland
Salzstrasse 4
67657 Kaiserlautern
Germany
Email: chadgarland@msn.com

SUBJECT:   FREEDOM OF INFORMATION ACT (FOIA) REQUESTS DON-USMC-
2020-011217, DON-USMC-2021-001819, DON-USMC-2020-011524,
AND DON-USMC-2021-002190; CORRESPONDING FOIA APPEALS
DON-NAVY-2021-003484, DON-NAVY-2021- 004006, DON-NAVY-
2021- 004501, AND DON-NAVY-2021-004732

   This letter reponds to your FOIA appeals received by my office on February 3,
February 25, March 10, and March 22, 2021, which were assigned FOIA appeal tracking
numbers of DON-NAVY-2021-003484, DON-NAVY-2021-004006, DON-NAVY-2021-
004501 and DON-NAVY-2021-004732, respectively.  You appeal the denial of your
underlying FOIA requests submitted between August 2020 and December 2020 to
Headquarters, United States Marine Corps (HQ, USMC), the initial denial authority
(IDA) for the records requested.  In your initial requests, you  sought the following
documents:

   1. DON-USMC-2020-011217: Statements of Award, citations, certificates and/or
accompanying narrative statements for all Silver Star Medals and for all Purple Heart
Medals awarded since December 31, 2014.

   2. DON-USMC-2021-001819: Records of investigation completed during the
period 1 January 2019 to 13 May 2020 and involving allegations against Marine Corps
Brig. Gen. Austin E. Renforth for sexual assault or harassment while serving in Iraq.

   3. DON-USMC-2020-011524: Statements of Award, citations, certificates and/or
accompanying narrative statements for all Silver Star Medals and for all Purple Heart
Medals awarded since December 31, 2014.

5720
Ser 14/124
April 28, 2021

    4. DON-USMC-2021-002190: Service records/record books for Marine Corps mascots Chesty 1 through Chesty XIV, including reports of investigation regarding the death of Chesty VI in 1979.

    On December 22, 2020, the IDA responded to your four FOIA requests, explaining that, as an employee of the Stars and Stripes Newspaper, an organization within the Department of Defense, you do not qualify as a requester under the FOIA.

    You then appealed, asserting in each of your appeals that the IDA's denial of your requests on the basis that you are a federal employee was improper because you made the requests as "a U.S. citizen, as a private party and representative of the news media" and not in your official capacity as en employee of Stars and Stripes.  Additionally, you stated that "[n]o one other than [you] had any prior knowledge of [your] intent to seek these records, nor did anyone give [you] permission, guidance, direction, consent or approval to request them via FOIA or any other means."  Accordingly, you contend that "HQMC improperly withheld the requested records" and "had sufficient information to grant at least a partial reduction in fees."

    Your appeal is a request for a final determination under the FOIA.  For the reasons stated below, your appeal is denied.

    The FOIA provides that a FOIA request can be made by "any person," which is defined in 5 U.S.C. § 551(2) as an "individual, partnership, corporation, association, or public or private organization other than an agency."  Because this statute specifically excludes federal agencies from the definition of "any person," a federal agency, or a representative of a federal agency, may not submit a FOIA request to a federal agency. Stars and Stripes is a component of the Defense Media Activity (DMA) and, as such, is a federal agency.  Accordingly, any representative of Stars and Stripes cannot use the FOIA to gain access to DoD information.

    In your initial FOIA requests, you identified yourself as both a private citizen and a representative of the news media.  You are identified as a Stars and Stripes reporter on both the Stars and Stripes website and on the website muckrack.com.  Per Department of Defense Directive (DoDD) 5122.11, paragraph E6.3.2.2, you may not file a FOIA request in your capacity as a Stars and Stripes reporter and DoD employee.  Nor may you file a FOIA request as a representative of the news media outside your capacity as a Stars and Stripes reporter.  Per DoDD 5122.11, paragraph 4.4.1, Stars and Stripes must operate in accordance with DoDD 5500.7, which requires DoD employees to obtain prior approval before engaging in outside employment.  Because you have not shown such prior approval here, your appeal is denied.

5720
Ser 14/124
April 28, 2021

As the Department of the Navy's designated adjudication official for this FOIA appeal, I am responsible for the denial of your appeal. You may seek judicial review of this decision by filing a complaint in an appropriate U.S. District Court. My office represents the U.S. Government and is, therefore, unable to assist you in this process.

You have the right to seek dispute resolution services by contacting the Department of the Navy's FOIA public liaison, Mr. Christopher Julka, at christopher.a.julka@navy.mil or at (703) 697-0031 or the Marine Corps FOIA public liaison, Ms. Sally Hughes, at HQMCfoia@usmc.mil or at (703) 614-4008,  You may also seek dispute resolution services from the Office of Government Information Services (OGIS), the Federal FOIA Ombudsman's office, at (202) 741-5770 or ogis@nara.gov.

If you have further questions or concerns for my office, my point of contact is Lieutenant Alyssa Williams, USN, who may be reached at alyssa.e.williams1@navy.mil or (202) 685-5398.

Sincerely,

S. D. SCHROCK
Director
General Litigation Division

Copy to:
HQMC (ARSF)
DON CIO

3

Exhibit 21

# DON-USMC-2021-007966 Request Details

Submitted ○ — Evaluation ○ — Assignment ○ — Processing ○ — Closed ○

## Contact Information

| | |
|---|---|
| **Full Name** | Mr. Chad Thomas Garland |
| **Organization** | |
| **Email Address** | chadgarland@msn.com |
| **Phone Number** | |
| **Fax Number** | |
| **Mailing Address Location** | International Address |
| **Address Line 1** | Salzstr. 4 |
| **Address Line 2** | |
| **City** | Kaiserslautern |
| **Province/Territory** | Rhineland Palatinate |
| **Postal Code** | 67657 |
| **Country** | Germany |

## Request Information

| | |
|---|---|
| **Agency** | United States Marine Corps |
| **Will Pay Up To** | $50.00 |
| **Date Submitted** | 06/23/2021 |
| **Estimated Date of Completion** | TBD |
| **Fee Category** | Simple |
| **Request Track** | Evaluation |
| **Request Phase** | Undetermined |
| **Final Disposition** | |

# Description

**Description**

This is a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Please provide me with copies of the reports of investigations pertaining to actual or alleged misconduct involving Major General Stephen M. Neary completed during the period June 1, 2020, to the date this request is processed. I am also seeking the exhibits and attachments to any responsive records as part of this request as well. I request the records in soft copy/digital format. I request that any photographs or other visual materials responsive to my request be released to me in the same format, color, quality and resolution as it exists in agency records. For example, if a photograph was taken digitally, I request disclosure of the digital file at the resolution it was in the original — or as it is in the file maintained in agency records if the original is not available — and not a reduced resolution version of the file or a printout and scan of that image. I request full release of the above documents to the extent allowable under the law and agency discretion, in the interest of maximum disclosure. However, I will accept all releasable portions of any documents reasonably segregable or redacted for the protection of privacy rights, state secrets, or other cognizable interests under the Act. In redacting, please "black out" any exempt material. If a document is denied in whole or in part, please specify which exemption(s) apply for each part or whole document denied. Please provide an itemized inventory and detailed factual justification for denial of parts or whole documents specifying the number of pages in each document and the total number of pages withheld. In order to help you determine my status for the purpose of assessing fees, you should know that I am an individual and I am seeking these records for noncommercial purposes.

# Request Expedited Processing

**Made Request?**   No

# Request a Fee Waiver

**Made Request?**   No

# Supporting Files

| Download | Attached File Name | Size (MB) | File Type |
|---|---|---|---|

No attachments have been added.